533 F.2d 942
 Alfredo G. PARRISH et al., etc., Plaintiffs-Appellants.
v.
BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR et al.,
etc., Defendants-Appellees.
ALABAMA BLACK LAWYERS ASSOCIATION et al., Plaintiffs-Appellants,
v.
BOARD OF COMMISSIONERS OF the ALABAMA STATE BAR, etc., et
al., Defendants-Appellees.
 Nos. 73-3553, 74-1523.
 United States Court of Appeals,
Fifth Circuit.
 June 21, 1976.
 
 U. W. Clemon, Birmingham, Ala., Elaine R. Jones, New York City, for plaintiffs-appellees.
 Truman Hobbs, Champ Lyons, Jr., William H. Morrow, Jr., Montgomery, Ala., for defendants-appellees.
 Appeals from the United States District Court for the Middle District of Alabama.
 Before TUTTLE, WISDOM and GEE, Circuit Judges:
 TUTTLE, Circuit Judge:
 
 
 1
 The Court, on its own motion, vacated its previous opinion in this case, 505 F.2d 12, by order dated February 20, 1975. Subsequently, by order of a majority of the active judges, the case was reheard en banc on the sole issue of the correctness of the trial court's denial of a motion, filed pursuant to 28 U.S.C.A. § 144, to disqualify the district judge who decided the matter. As to this issue, this Court, en banc, with three judges dissenting, held that even though the amended section 455 of 28 U.S.C. is to be the standard to apply to this pending suit the affidavit before the trial court was insufficient to warrant this Court's reversing the trial judge's failure to disqualify himself. The remaining issues on appeal were remanded by the Court en banc to the original panel for further consideration, Parrish, et al., etc. v. Board of Commissioners, et al., 524 F.2d 98 (5th Cir. 1975).
 
 
 2
 There now remain for our consideration all of the grounds for appeal originally asserted with the exception of that related to the disqualification of the trial judge.
 
 
 3
 I. PROCEDURAL BACKGROUND.
 
 
 4
 The Alabama Black Lawyers Association (ABLA) and eight named plaintiffs appeal the grant of summary judgment against them on all issues in their class action alleging racial discrimination by the Boards of Commissioners and Bar Examiners of the Alabama Bar Association in their policies and practices governing admission to the bar.
 
 
 5
 Briefly stated, the suit sought injunctive and declaratory relief, under 42 U.S.C. §§ 1981-1983 and 28 U.S.C. §§ 2201-2202, respectively, for a class defined as "all Black persons who have applied or will apply for admission to the Alabama Bar, or who would have so applied but for having been discouraged or prevented from doing so by the (defendant's) discriminatory practices" and who meet all valid non-discriminatory standards for admission. The gist of the complaint, which was filed October 31, 1972, is that the Alabama bar examiners unconstitutionally discriminated against black applicants by identifying their supposedly anonymous examination papers and then grading them lower than white applicants who displayed equal proficiency. The complaint also alleged that the bar examination which then[1] was exclusively written essay, "timed and closed-book" is "unvalidated" and not sufficiently "job-related," and thus unconstitutional because it fails blacks in disproportionately high numbers compared to whites.
 
 
 6
 Shortly after the complaint was filed, each party filed several motions. Most importantly, the defendants moved to dismiss plaintiffs Eddie Jones, Thomas W. Gray and the ABLA for lack of standing, and the plaintiffs moved that the trial judge recuse himself pursuant to 28 U.S.C. § 144. The trial judge granted defendants' motion to dismiss Jones, Gray and the ABLA, but refused after a hearing had been held and affidavits filed to recuse himself.
 
 
 7
 Both parties undertook extensive discovery. Plaintiffs received nearly 150 pages of answers to interrogatories from defendants and took two lengthy depositions from members of the Board of Bar Examiners. Defendants received answers to interrogatories from each of the named plaintiffs. None of the discovery revealed specific instances where the anonymity of the examinees had been compromised; at most, the plaintiffs swore that there were one or two instances when an examiner could have seen an examinee's test number. The plaintiffs' case thus boiled down to a proof of statistics. Statistics produced during the litigation showed, for example, that in the last ten bar examinations the passing rate for blacks had been 32% while it had been 70% for whites. Furthermore, in a state whose population is 25% black, the number of black lawyers is less than 1%.
 
 
 8
 Defendants moved for summary judgment on April 2, 1973, but the trial court withheld a ruling for over four months in order to give plaintiffs "ample opportunity to obtain by discovery facts to be used in traversing the motion." Plaintiffs accomplished all of their desired discovery during this period, with one exception: defendants failed to produce copies of all answer sheets for the February 1973 bar examination. Defendants objected to producing these documents on the grounds that they were not relevant and material to the complaint. Plaintiffs filed a motion on May 28, 1973, to compel production.
 
 
 9
 Without specifically ruling on this motion, the trial court entered summary judgment for defendants on all issues on August 21, 1973. The court found that there was no material issue of fact between the parties and held that "under the circumstances . . . the disparity in percentage of failures among blacks as compared to whites has little weight and fails to make out a prima facie case sufficient to realign the burden of proof so as to require the Defendants to establish that the exams are not discriminatory or so as to require them to validate the exams."
 
 
 10
 With respect to plaintiffs' other main contentions, the court held that the defendants had a compelling state interest to identify attorneys, and thus that requiring applicants to submit photographs of themselves prior to taking the examination does not "violate their constitutional rights;" however, the court declined to consider the constitutionality of procedures (particularly a personal interview) applied to applicants petitioning to take the exam for a fourth time, following three attempts as of right, because "no Plaintiff in this lawsuit has the standing to raise the question."
 
 
 11
 Appellants' remaining points of appeal are:
 
 
 12
 1) that plaintiffs Jones, Gray and the ABLA should not have been dismissed from the suit for lack of standing;
 
 
 13
 2) that summary judgment was inappropriate, because discovery was incomplete and there were material issues of fact;
 
 
 14
 3) that the unvalidated bar examinations, which fails blacks in disproportionately high numbers, is insufficiently job-related to be constitutional;
 
 
 15
 4) that the requirement of a photograph, as part of the application to take the bar examination, is unconstitutional;
 
 
 16
 5) that the procedures governing petitions to take the bar examination for a fourth time are arbitrary and capricious, and thus violate the appellants' right to due process of law.
 
 
 17
 II. PARTIES TO APPEAL.
 
 
 18
 Before discussing appellants' contentions, it is necessary to dispose of a jurisdictional objection raised by the appellees in their brief. Appellees argue that only appellants Alfredo Parrish and Henry Thompson are properly before this Court, because the plaintiffs' notice of appeal and amended notice of appeal expressly named only Parrish and Thompson. This issue actually drops out of the case, however, because when this failure was brought to the attention of the appellant by the filing of the appellees' briefs, they proceeded to remedy the defect. This was done when the appellants learned that the judgment which they sought to appeal originally was not a "final judgment" since it did not meet the requirement of F.R.C.P. Rule 58 that a final judgment must be "set forth on a separate document." Appellants thereupon caused the trial court to enter a new final judgment on the separate document as required by the Rule. They thereupon perfected an appeal, naming all of the parties to the original complaint. This appeal was thereafter, by action of this Court, consolidated with the pending appeal, thus accounting for the double numbered captions in this case. An appeal from such subsequent judgment entered to conform to the "separate document" requirement has been expressly approved by the Supreme Court in United States v. Indrelunas, 411 U.S. 216, 93 S.Ct. 1562, 36 L.Ed.2d 202 (1973). We conclude, therefore, that all the parties designated in the notice of appeal filed in No. 74-1523, the second appeal, are now before the Court in the consolidated cases.
 
 
 19
 III. DISMISSAL OF JONES, GRAY AND ABLA.
 
 
 20
 The trial judge granted defendants' motion to dismiss plaintiffs Eddie Jones and Thomas W. Gray on the ground that their claims were barred by Alabama's one-year statute of limitations. Neither party disputes the applicability of the statute.
 
 
 21
 Jones and Gray were named as plaintiffs in the suit to represent a class, in the words of the appellants, "who were arbitrarily and capriciously denied the opportunity to sit a fourth time for the Alabama Bar examination." Both Jones and Gray took the bar examination three times and failed each time.[2] In order to sit for the examination a fourth time, each appellant needed special approval from the appellee Board of Commissioners.[3]
 
 
 22
 This issue has also dropped out of the case during its pendency here. Although not mentioned by either party, the Court notes that the Alabama statute has been amended during the pendency of this litigation in a manner that eliminates the basis on which the appellants premised their contention that they were denied their rights to seek a fourth-time examination by virtue of arbitrary, capricious conduct taken without any ascertainable standards. This question was eliminated from the case when the Alabama Legislature by an act approved August 30, 1973, while the appeal was pending in this Court, did away with the fourth-time limit which had been in effect at the time the suit was filed. This statute provides as follows:
 
 
 23
 " § 27(2). Limit on number of times person may take bar examination prohibited. Any rule, regulation or law limiting the number of times that any person, otherwise qualified may apply for and stand the Alabama bar examination at any regular examination session is hereby prohibited. However, no applicant may take the examination more than three (3) times in any three (3) year period. (1973, No. 750, appvd. Aug. 30, 1973.)"
 
 
 24
 Code of Alabama, Cum.Supp., Vol. 10, Title 46, § 27(2).
 
 
 25
 Since these two appellants sought only relief from a pre-existing rule restricting fourth-time examinations, it is clear now that the issue has become moot.
 
 
 26
 IV. PROPRIETY OF SUMMARY JUDGMENT.
 
 
 27
 With these preliminary considerations aside, we come now to the appellants' principal argument: that summary judgment in this case was inappropriate, because the trial court did not allow complete discovery. Appellants also argue that there were material issues of fact and that the appellees were not entitled to summary judgment on the law, but their main contention is that summary judgment was precluded as a matter of law because there were outstanding motions to compel interrogatories and that without this information they were unable to prepare adequately their affidavits in opposition to the motion for summary judgment.
 
 A. Adequacy of Discovery
 
 28
 The appellees moved for summary judgment on April 2, 1973, and on April 20 the court held a hearing to consider the motion. The court asked counsel for the appellants pointedly what further discovery they needed in order to "present by affidavit facts essential to justify your opposition" to the motion for summary judgment. Counsel for the appellants replied that they needed answers from the Chairman of the Board of Bar Examiners to interrogatories and the transcripts of depositions taken of two of the bar examiners. After agreeing that it would reserve these items, the trial court then asked counsel for the appellants: "Now, what other discovery are you seeking?" Counsel replied: "Well, in light of our discussion this morning we also would need to inspect the minutes (of the state bar association) again. We have a motion for the production of documents. We will need to see the files of persons who have applied to take the bar examination."
 
 
 29
 In the four months intervening between this hearing and the issuance of the order granting summary judgment, the appellants accomplished all of the discovery they had requested at the hearing with one exception: the appellees failed to produce the "documents" mentioned by counsel for the appellants, which consisted of all answer sheets and all grading notes made by the examiners for the February, 1973, bar examination. Appellants filed a motion to compel production of these documents on May 28, but the trial court never ruled on the motion.[4]
 
 
 30
 Appellants argue that without access to these documents they were unable to oppose adequately the motion for summary judgment. They contend that an analysis of the answer sheets would demonstrate whether or not substantially identical answers were graded discriminatorily on the basis of race.
 
 
 31
 Appellees contend that the positive affirmation by the defendants that they were not guilty of any improper conduct with respect to the conduct of the examinations stands undisputed on the record and that therefore the examination papers and notes of the examiners demanded by the plaintiffs were not relevant to any issue framed by the pleadings. They contend that a failure to provide for discovery, in and of itself, does not amount to substantial prejudice to a party where the discovery sought is not relevant, Bell v. Swift & Co., 283 F.2d 407, 409 (5th Cir. 1960). On the other hand, appellants place their claim for the right of access to the examination papers on the principle announced in Rule 56(f) to the effect that where the person opposing the motion for summary judgment is unable to present by affidavit facts essential to justify his opposition, the court should provide for discovery of the information from which such party will be able to formulate appropriate affidavits in opposition to the motion.[5]
 
 
 32
 In effect, the argument of appellees amounts to a contention that a mere denial of improper conduct by the party against whom discovery is sought is adequate to support a refusal to compel discovery, unless the opposing party is able to counter such denial by specific affidavit. Such a rule would frustrate the discovery process and tend to erect an unreasonably protective shield around parties possessing material relevant and necessary to fair litigation. This result would be particularly unjust for plaintiffs seeking to vindicate civil rights where different parties utilize the terminology "discrimination" with different meanings according to the idea of the person using the term. In pointing to the argument of appellants as to the need for examining the 1973 examination papers and grading notes respecting them we, of course, do not mean to suggest that an examination of these documents would substantiate the allegations of the complaint sufficiently to permit the filing of affidavits diametrically opposed to those filed by the defendants. Neither do the appellants claim that such an examination would permit them to accomplish this result. Their contention is simply that because of the existence of the disparity in results on a racial basis, because of the fact that all applicants were required to file photographs, thus making possible an identification by race, and the fact that the examinations were not validated in the sense ordinarily used with respect to equal employment opportunity type cases, they should have an opportunity to see whether the examiners did in fact grade the papers of white applicants and black applicants differently upon similar answers to the examination questions. It can hardly be supposed that if such a showing resulted from a perusal of these examinations then the case would be ripe for summary judgment on motion of the defendants.
 
 
 33
 Finally, the fact that the defendants required a clearly racially identifiable application form to be filed for the taking of examinations[6] without question put it within the power of the defendants to utilize racial identification as an ingredient in the grading of the examination papers. Again, we state that we do not imply that the defendants, or any of them, acted with such motivations, but we are compelled to recognize that a plaintiff has a right to challenge the sworn affidavits used to support a motion for summary judgment by discovery in order to meet such a motion just as he is entitled to challenge sworn testimony on a trial. The degree of likelihood that perusal of the examination papers will enable the plaintiffs successfully to formulate affidavits in contradiction to those of the defendants cannot be the test by which we determine their right to see the documents. We are convinced that upon the record the documents would be relevant.
 
 
 34
 In sum, we conclude that the trial court should have required the production of the examination papers and the graders' notes as requested by the plaintiffs before passing on the defendant's motion for summary judgment. The court's failure to do this makes it necessary for the case to be remanded in order to permit the plaintiffs to complete their discovery as to matters on which the trial court had not acted prior to its final judgment.
 
 
 35
 Of course, the whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits. We conclude that the granting of the motion for summary judgment by the trial court without requiring the production of the documents requested deprived the appellants of an opportunity to develop the facts on which they sought to create a fact issue before the trial court.
 
 
 36
 This Court's case of Tyler v. Vickery, 517 F.2d 1089 (5th Cir. 1975) is significant in connection with the matter of the furnishing of the bar examination papers for inspection by the plaintiffs. In Tyler this Court affirmed a summary judgment for the defendants in a suit by black plaintiffs against bar examiners of the State of Georgia. The suit alleged substantially the same bases for the alleged deprivation as are present in this suit. Following the filing of affidavits by the state officials in Tyler which denied the allegations that the gradings had been on a discriminatory basis or any basis other than one of absolute anonymity the trial court granted a motion for summary judgment. In affirming that judgment, however, this Court noted with particularity that:
 
 
 37
 "Here there was not only no request for further discovery, but the record affirmatively shows that appellants were furnished with the examination papers written by all applicants on the July, 1972 examination." (Emphasis added.)
 
 The Court then stated:
 
 38
 "Thus, were there more than surmise to the asserted connection between Black English and the poor showing of Black bar applicants, appellants had both the means and the duty to bring the pertinent facts forward. Their failure to do so cannot be construed as creating a fact issue precluding summary judgment." 517 F.2d 1089, 1095.
 
 
 39
 In the case before us, the appellants lacked "the means" (access to the examination papers) and thus were not saddled with "the duty" to bring the pertinent facts forward, to utilize the language used by the Court in Tyler.
 
 
 40
 It is horn-book law that a trial court may not grant a motion for summary judgment unless "the basic facts are undisputed and that there is no dispute between the parties as to any material factual inferences that may be properly drawn from such facts . . ." Sinderman v. Perry, 430 F.2d 939 (5th Cir. 1970), aff'd, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570, and that "all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion for summary judgment." Time, Inc. v. Ragano, 427 F.2d 219 (5th Cir. 1970).
 
 
 41
 We agree that in light of this Court's Tyler decision there was insufficient factual dispute between the parties on the record as it stood without the requested documents to require us to reverse the summary judgment except as subsequently discussed. However, this is an entirely different matter from a holding that the plaintiffs were not entitled to complete their discovery, as was done in Tyler.
 
 
 42
 This Court in Tyler held that in the context of a state bar examination statistics alone which show a wide disparity between the success of black applicants as against white persons is not enough in and of itself to create an issue of fact to withstand a motion for summary judgment where the undisputed affidavits on file categorically denied any racial bias in conducting the examinations. That decision, however, did not hold, as the trial court did here, that such disparity was not sufficient to give relevance to the demand by the plaintiffs for access to the actual examination papers for the year in question to form the basis of further proof to be offered by the plaintiffs.
 
 B. Validation of Examinations
 
 43
 Appellants contend that where the bar examinations result in eliminating from the possibility of the practice of law a much higher percentage of black applicants than white it is a deprivation of their constitutional rights for them to be required to pass such examination without its having been validated in the sense that this term is used under Title VII of the Equal Employment Opportunity Act. Since the disposition of the case in the trial court, and following oral argument in this Court, the case of Tyler v. Vickery, supra, has been decided by this Court. The Court there faced precisely the same issue which is here raised with respect to the validation contention. In Tyler the Court held that Title VII as interpreted by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971) to require validation has no application to the Georgia State Bar Examiners. We perceive no basis for distinguishing that case from the Alabama case now before us.
 
 
 44
 V. PHOTOGRAPH REQUIREMENT.
 
 
 45
 There is one more ruling of law that must now be considered. The trial court held that the requirement of a photograph as part of the application to take the bar[7] did not violate the appellants' right to equal protection of the law under the Fourteenth Amendment to the Constitution. The objection to it, of course, is the obvious opportunity it provides for discrimination.
 
 In its order, the trial court said:
 
 46
 "No factual issue is involved herein, and the Defendants argue, and are supported by Feldman v. Board of Bar Examiners, 438 F.2d 699, 703 (8th Cir. 1971), and Harris v. Louisiana Supreme Court, (334 F.Supp. 1289 (three-judge court, E.D.La.1971)), that a compelling state interest requires that attorneys be identified, and the pictures serve to identify the attorneys for records of the Bar Association and to discourage persons other than the applicants from taking the Bar Examination. . . ."
 
 
 47
 The appellants make a convincing argument that although a state may have a compelling interest in identifying its attorneys, once they have been admitted to practice, the basis for this interest is absent prior to admission. Moreover, they point out that the record demonstrates that the photographs have never been utilized in Alabama for their stated purpose: to deter outsiders from taking the bar examination in place of qualified applicants.[8]
 
 
 48
 The Supreme Court has condemned procedures in other areas, most notably in jury selection and voter registration, which create such an opportunity for discrimination. In Avery v. Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244 (1963) the Court found constitutionally invalid a jury selection system that identified white jurors on white tickets and black jurors on yellow tickets:
 
 
 49
 "Obviously that practice makes it easier for those to discriminate who are of a mind to discriminate." 345 U.S. at 562, 73 S.Ct. at 892, 97 L.Ed. at 1247.
 
 
 50
 The Court has also condemned jury selection systems that designate blacks with an identifying code letter after their names, Whitus v. Georgia, 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967). In an election case, Anderson v. Martin, 375 U.S. 399, 402, 84 S.Ct. 454, 456, 11 L.Ed.2d 430, 432 (1964), the Supreme Court noted that "by placing a racial label on a candidate at the most crucial stage in the electoral process the instant before the vote is cast the State furnishes a vehicle by which racial prejudice may be so aroused as to operate against one group because of race and for another."
 
 
 51
 This Court has consistently held invalid jury selection systems based on tax records that differentiate taxpayers on the basis of race by the use of different colored forms for different races. See, e. g., Jones v. Smith, 420 F.2d 774 (5th Cir. 1969); Colson v, Smith, 438 F.2d 1075 (5th Cir. 1971). We have even held invalid systems where the jury list itself contained no racially identifying marks, but where it was compiled from records that differentiated taxpayers on a racial basis, Colson v. Smith, id. at 1082-83. The requirement of a photograph, appellants contend, creates the same danger of discrimination that has been consistently outlawed in these cases. This opportunity for discrimination, which if coupled with statistics showing a prima facie case of racial discrimination as was present in the jury selection cases, would deny appellants equal protection of the law.
 
 
 52
 Here, as we have already stated, the record as it stood at the time of the summary judgment did not contain any facts that created a presumption of racial discrimination. Thus, the existence of an opportunity to discriminate cannot be prohibited on constitutional grounds, and there was no issue of fact on the record as it then stood that would prevent the trial court from entering summary judgment as to that issue. Now, however, since it is necessary for the trial court to open the record to permit plaintiffs to examine the examination papers the judgment disposing of the appellants' claim as to the use of the photographs is vacated pending a further disposition of the case below, since the granting of the motion for summary judgment, as we have already indicated, cannot be used to foreclose the right of the plaintiffs to examine these documents.
 
 
 53
 VI. FOURTH-TIME APPLICATION FOR EXAMINATION.
 
 
 54
 The trial court did not reach the question of the validity of procedures utilized in reviewing fourth-time applications, because it held that with the dismissal of Jones and Gray from the suit there was no plaintiff with standing to raise the question. As we have noted above under part III of this opinion, this question is now moot, since the Alabama legislature has eliminated the rule of the State Bar examinations with respect to the taking of examinations after three failures.VII. CONCLUSION.
 
 
 55
 We conclude that the trial court erred in entering a summary judgment without having first required the defendants to make available for inspection as requested by the plaintiffs the examination papers and graders' note, if any, for the year 1973.
 
 
 56
 The judgment of the trial court is REVERSED and REMANDED for further proceedings not inconsistent with this opinion.
 
 
 57
 GEE, Circuit Judge (concurring in part and dissenting in part):
 
 
 58
 I concur in parts I, II, III, IVB, and VI of the majority opinion. Indeed, in the present context the claim that the Constitution requires validated bar examinations is almost meaningless: the thrust of Griggs v. Duke Power Company, 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), that educational criteria irrelevant to the immediate demands of a job may not be employed to screen for it where their effect is racially discriminatory has no application when the criteria applied are relevant. Here they plainly are.
 
 
 59
 I also agree with the majority's conclusion in part IVA that summary judgment on the claim of discriminatory grading was premature since there were outstanding motions seeking discovery of relevant material. However, my agreement is limited to the facts of this case, one in which the judge failed to set a specific deadline for discovery and manifested an intention to rule on further discovery as the need arose before deciding the summary judgment motion. And I disagree with the majority's conclusion that this discovery must be granted. A motion to compel discovery is addressed to the discretion of the district court,[1] and we exceed our proper appellate function when we substitute our discretion for that of the district judge. It is because, and only because, his discretion was never exercised and the case was concluded by summary judgment at a time when plaintiffs had good right to believe that a favorable ruling might be made and might furnish them useful ammunition to defeat the motion that I agree the judgment was premature. On remand, the district judge should be allowed to exercise his discretion in ruling on the discovery motion. For example, he is empowered to deny the motion on considerations of annoyance, embarrassment, oppression, or undue burden or expense, notwithstanding the relevance of the material sought. See Fed.R.Civ.P. 37(a)(2), 26(c).
 
 
 60
 I dissent on the merits from Part V of the majority opinion, which I understand to resurrect appellants' facial attack on the photograph requirement as well as their claim of actual discrimination in the grading of the examinations. The facial attack was based on due process, not equal protection. The majority's observations on equal protection are, therefore, gratuitous. Moreover, the jury-selection and voter-registration cases relied on by the majority do not bear on this issue at all; they involve frank and uncalled-for racial classifications, classifications which could have had no proper relevance to the matter there in hand. Photographs may well have proper uses, of which identification is one. Nor am I able to follow the majority's distinction between state interests in identifying attorneys and would-be attorneys; whether the photograph is actually used or not, it seems a powerful and reasonable deterrent to imposters, who are at least as likely to be found at bar-examination time as at any other. Finally, the majority opinion, supra slip opinion at p. 949 overstates the holding of these cases. They do not lay it down that the combination of a pattern of disproportionate statistics and an opportunity to discriminate denies equal protection as a matter of law; they hold merely that this combination makes a prima facie case, shifting the burden of proof to the state on the fact issue of actual discrimination.
 
 
 61
 The excessive sweep of the majority opinion is emphasized by the observation that the photograph is not essential to the bar examiner's ability to discriminate. Many blanks on the application, from the name and address to the name of the applicant's law school, could be abused by a bar examiner bent on discrimination. And after all, one who actually takes the bar examination must at this point, if no sooner, present himself to the sight of the ill-disposed, if such there be. Perhaps the photograph can be more readily abused, but the equal protection clause does not invalidate all procedures which can be abused and the constitution does not either require or forbid every conceivable inquiry on examination applications.
 
 
 62
 There is a limit to the uses of mechanical solutions. Projected too far, or spun too fine, their application is felt as officious and draws in question even their proper function by making them appear silly in gross. In countenancing this contention, I am afraid we do so here.
 
 
 
 [1]
 Since July 25, 1973, Alabama has used the Multistate Bar Examination (MBE) as part of its own bar examination. The MBE is an "objective," Multiple-choice type of test
 
 
 [2]
 Jones sat and failed the exam in February of 1958, July of 1958 and February of 1959. Gray sat and failed the exam in June of 1963, July of 1964 and February of 1967
 
 
 [3]
 Rules Governing Admission to the Bar of Alabama, Rule IV(D), provided in full:
 "(D) Limitation on Examinations.
 No applicant shall be permitted to take the examination, under these rules, more than three times unless subsequent applications by such applicants are approved by the Board of Commissioners of the Alabama State Bar."
 
 
 [4]
 The appellants filed another motion on May 28, to compel further answers to interrogatories from the Secretary of the Alabama Bar Association, and this motion was never ruled on by the trial judge either. In view of other information discovered, and in view of the trial court's action on other requests for similar if not identical information, the failure to rule on this motion did not substantially prejudice the rights of the appellants
 
 
 [5]
 F.R.C.P. 56(f):
 "When Affidavits are Unavailable.
 Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."
 
 
 [6]
 The testimony was undisputed, as presented by the defendants, that although it was contended that the photograph requirement was to prevent someone other than the true applicant from taking the examination, it had never been used for that purpose
 
 
 [7]
 Rules Governing Admission to the Bar of Alabama, Rule II-E, provides:
 "E. Each applicant shall attach to his application a recent picture of himself. No particular size or dimensions of such picture shall be required, but same shall be a clear likeness of the applicant."
 
 
 [8]
 At the April 20 hearing, the appellee secretary of the Alabama Bar Association stipulated that "there is no effort by affiant to match the photographs of applicants with the persons actually appearing for the bar examinations, and affiant knows of no one else who attempts to make such a match up."
 
 
 [1]
 Swanner v. United States, 406 F.2d 716, 719 (5th Cir. 1969); 8 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 2215 (1970 ed.)