**WSB–TV, Mark C. Winne and Richard Nelson, Plaintiffs–Appellants,**

v.

**Earl LEE, Defendant–Appellee.**

No. 87–8455.

United States Court of Appeals, Eleventh Circuit.

April 22, 1988.

---

Terrence B. Adamson, Dow, Lohnes & Albertson, Peter C. Canfield, Atlanta, Ga., for plaintiffs-appellants.

Donald B. Howe, Jr., Howe, Sutton, McCreary & Dettmering, Douglasville, Ga., Harvey S. Gray, Fortson & White, Atlanta, Ga., for defendant-appellee.

Before TJOFLAT and HATCHETT, Circuit Judges, and LYNNE*, Senior District Judge.

LYNNE, Senior District Judge:

This appeal is taken from the summary judgment entered by the Court below dismissing the claim of plaintiffs, posited upon 42 U.S.C. § 1983, that defendant, acting under color of law, deprived them of the right to freedom of the press secured by the Constitution. We reverse.

We step briskly across the procedural morass revealed by the record, pausing briefly at tufts of more than passing significance. On November 10, 1986, plaintiffs, WSB–TV, a Georgia television station that broadcasts from Atlanta, Georgia, Mark C. Winne, a WSB–TV reporter, and Richard Nelson, a WSB–TV cameraman, filed their complaint against defendant, Earl Lee, the Sheriff of Douglas County, Georgia. Plaintiffs alleged, *inter alia*, that Lee's action on November 6, 1986, "in the course of carrying out his duties under color of state and local law" in seizing Nelson's camera, "was an unconstitutional interference with the legitimate newsgathering (sic) activities of plaintiffs." On November 28, 1986, defendant filed his answer and counterclaim for defamation of character.

On February 18, 1987, defendant filed his motion for summary judgment, supported by his own affidavit. The gist of his version of the November 6th incident was that, despite the persistence of Winne who sought to ask him questions, he refused to be interviewed and that when Nelson refused to move his camera from his face, he pushed it aside and left.

On March 18, 1987, plaintiffs filed a motion pursuant to Rule 56(f) requesting deferral of defendant's summary judgment motion until they were afforded an opportunity for additional discovery since de-

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

fendant had refused to respond to their discovery requests.

On April 22, 1987, plaintiffs moved for leave to file an amended complaint and to add District Attorney Frank C. Winn as an additional party defendant,[1] tendering therewith the proposed amended complaint, containing a more definite statement of their claims, and three supplemental affidavits. The court entered no order upon such motion.

On May 27, 1987, the court entered an order expressly overruling plaintiffs' Rule 56(f) motion, granting defendant's motion for summary judgment, and, declining to retain jurisdiction of the pendant state law claims asserted by plaintiffs, dismissed the action. At that time, the court had before it the file containing the proposed amended complaint and seven affidavits submitted in behalf of plaintiffs which contain the following factual recitals:

1. In October, 1986, WSB–TV and Mark Winne began an investigation into allegations that Sheriff Lee had abused his public office by using inmate labor on private construction projects.[2]

2. On October 24, 1986, before WSB–TV had aired any report of such allegations, District Attorney Winn of Douglas County telephoned WSB–TV news director, stated that he was calling on behalf of Sheriff Lee, and informed Lippoff that the sheriff would not provide any information with regard to the allegations unless WSB–TV assigned the story to a reporter other than Mark Winne.[3]

3. On October 28, 1986, WSB–TV aired its first report, prepared by Mark Winne, of allegations that the sheriff was using inmate labor to build a barn on his own property in Douglas County.[4]

4. On October 29, 2986, WSB–TV aired its second report to the effect that an inmate of the Douglas County jail, Charles Derrick Bray, who reportedly had been working on such barn, had been arrested and charged with driving under the influence of drugs or alcohol while operating a car belonging to Sheriff Lee.[5]

5. After the airing of these reports but prior to the November 6th incident, Sheriff Lee informed Lippoff that he had ordered his deputies to hold Winne and notify him if they should find Winne on or near his property.[6]

6. On the morning of November 6, 1986, after learning of new allegations regarding the use of inmate labor at Sheriff Lee's lake house in Cobb County, WSB–TV dispatched Winne and Nelson to Douglas County to solicit Lee's comments upon these new allegations and to videotape his response.[7]

7. That afternoon as Lee was walking toward a side door of the Sheriff's Department, Nelson began taping and Winne told the sheriff that he would like to ask him some questions. Whereupon, Lee turned, pulled the microphone from the camera and pushed the camera and Nelson, to whom the camera was strapped, down toward the ground. Lee continued to hold Nelson in this position for approximately a minute before releasing him and proceeding to the Sheriff's Department.[8]

8. Immediately thereafter while Winne was in the Douglas County Courthouse attempting to obtain a warrant for Lee's arrest, the sheriff appeared and within

1. The motion for leave to file an amended complaint was one of six motions pending when summary judgment was entered. The record reflects no formal ruling on any of such motions. While under these circumstances we must consider the motion to amend to have been overruled by implication, it was before the court and the record is devoid of any suggestion that there was any reasonable basis for denial. On remand, we confidently expect the court to rule formally upon such motion consistent with the letter and spirit of Fed.R.Civ.P. 15(a).

2. Lippoff affidavit.

3. Lippoff affidavit.

4. Lippoff affidavit.

5. Lippoff affidavit.

6. Lippoff affidavit.

7. Nelson and Winne affidavits.

8. Nelson and Winne affidavits.

hearing distance of Winne stated that the next time he would "knock his eyes out."[9]

9. On February 6, 1987, District Attorney Winn wrote Andrew Fisher, WSB–TV general manager, a letter in which he stated that he did not consider it prudent for WSB–TV to continue to send Mark Winne to Douglas County to work on stories involving the Sheriff's Department.[10]

## DISCUSSION

Our review of the district court's grant of summary judgment is plenary and is to be conducted utilizing the same legal standards as those imposed upon the district court. *Mercantile Bank & Trust v. Fidelity & Deposit Co.*, 750 F.2d 838, 841 (11th Cir.1985). Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

Three recent Supreme Court cases vacating appellate reversals of district court orders granting summary judgment illuminate both the utility and the limitations of summary procedure. *Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Industrial Co. v. Zenith Radio Corporation*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Their common denominator is the Court's caveat that summary judgment may only be decided upon an adequate record.

In *Anderson*, the Court held that Rule 56(e) provides that, "when a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" 106 S.Ct. at 2511. The Court underscored that:

This requirement in turn is qualified by Rule 56(f)'s provision that summary judgment be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition. In our analysis here, we assume that both parties have had ample opportunity for discovery.

*Id.* at n. 5.

In *Celotex*, the Court held that "Rule 56(c) mandates the entry of summary judgment ... against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" but only "after adequate time for discovery." 106 S.Ct. at 2552–53. In concluding that the district court had properly granted summary judgment, the Court noted that "[t]he parties had conducted discovery, and no serious claim can be made that respondent was in any sense 'railroaded' by a premature motion for summary judgment." 106 S.Ct. at 2554. Recognizing that premature motions present a problem, the Court concluded that the problem:

can be adequately dealt with under Rule 56(f), which allows a summary judgment motion to be denied, or the hearing on the motion to be continued, if the nonmoving party has not had an opportunity to make full discovery.

106 S.Ct. at 2554–55. In *Matsushita*, 106 S.Ct. at 1352, the Court considered it significant that the parties had conducted "several years of detailed discovery."

█ In the case *sub judice* plaintiffs had been afforded no opportunity for discovery. Under the circumstances outlined above, consideration of defendant's motion for summary judgment in this six-months-old case was erroneous. *Parrish v. Board of Commissioners*, 533 F.2d 942, 951 (5th Cir. 1976) (trial court did not allow relevant discovery; summary judgment reversed).

█ Moreover, with gaze too foreshortened upon the physical encounter of November 6, 1968, the court did not discuss

---

9. Winne affidavit.

10. Exhibit B to Fisher affidavit.

and apparently failed to consider conflicting inferences, reasonably to be drawn from all of the affidavits on file, as to the motivation of the sheriff's conduct on that occasion.

In determining whether the party who moves for summary judgment has met his burden of establishing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law, the evidence and inferences drawn from the evidence are viewed in the light most favorable to the nonmoving party, and all reasonable doubts are resolved in his favor. *Mercantile Bank, supra,* 750 F.2d at 841. In deciding whether an inference is reasonable, the court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." *Southway Theatres, Inc. v. Georgia Theatre Co.,* 672 F.2d 485, 493 (5th Cir.Unit B 1982). The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. *Id.* at 495. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one. *Id.*

After a careful review of the record, we are persuaded that a reasonable inference to be drawn from affidavits submitted by plaintiffs is that the November 6th incident was but one episode in the ongoing effort of defendant to thwart or impede plaintiffs in gathering and reporting news relating to rumors of the sheriff's use of inmate labor on his private property, an interference with plaintiffs' first amendment rights which would violate 42 U.S.C. § 1983.[11] Thus, the entry of summary judgment was interdicted and requires reversal.

REVERSED and REMANDED.

---

11. For the first time, at oral argument appellee advanced the contention that the evidence before the court in the form of affidavits afforded no inference that the sheriff was acting under color of state law, an essential element of a Section 1983 action. This argument was not made either before the district court or in the brief submitted to this court. Obviously it must be addressed by the finder of fact. But, as we have noted, reasonable inferences which may be drawn from plaintiffs' affidavits create a genuine issue of material fact which preclude its summary resolution. Of course, if all that Lee did was to express his angry resentment of an intrusion upon his person by removing Nelson's camera from his face so rudely as to constitute an assault and battery, it would not be considered as action under state law simply because he occupied the elective office of sheriff.

On the other hand, if Lee misused his power as the chief law enforcement officer of Douglas County to punish plaintiffs for the exercise of their constitutional rights to gather and report news or to interfere therewith by assaulting them, by ordering his deputies to hold (arrest) Winne if they found him on or near his private property or by directing his deputies to place Winne and Nelson under surveillance, such action would meet the color of law test under 42 U.S.C. § 1983. The test is clearly stated in *Baldwin v. Morgan,* 251 F.2d 780, 786 (5th Cir.1958):

But that is not the test. The Public Service Commission clearly had the general authority to issue orders. And the City Commissioners and policemen subordinate to them had general authority to make arrests. If these powers are being misused, either because beyond the power invested in them by the local law or because the use of that power deprives one of a constitutionally protected right, it is still under color of state law. For "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." *United States v. Classic,* 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368, 1383 [ (1941) ].