**James A. SNOOK, Kay Sessoms Hinson and Betty S. Prevatt, Plaintiffs–Appellants,**

v.

**TRUST COMPANY OF GEORGIA BANK OF SAVANNAH, N.A., Alexander Sessoms and Raymond Johnson, co-trustees U/A Alex K. Sessoms and Edna S. Sessoms; Alexander Sessoms, individually and as an officer and director of Timber Products Company; and Donald R. Correll, individually and as vicepresident and trust officer of Trust Company of Georgia Bank of Savannah, N.A., Defendants–Appellees.**

No. 87–8646.

United States Court of Appeals, Eleventh Circuit.

Nov. 7, 1988.

R.M. Guttshall, III, Guttshall & Guttshall, Thomasville, Ga., for plaintiffs-appellants.

John B. Miller, Miller, Simpson & Tatum, Savannah, Ga., William U. Norwood, Alexander & Vann, Thomasville, Ga., John T. McTier, Tillman, McTier, Coleman, Talley, Newbern & Kurrie, Valdosta, Ga., for defendants-appellees.

Before FAY and CLARK, Circuit Judges, and GUIN *, District Judge.

GUIN, District Judge:

The plaintiffs below appeal from orders of the United States District Court for the Middle District of Georgia granting summary judgment for the defendants and denying the plaintiffs' motion for a preliminary injunction. We reverse and remand for further proceedings.

## BACKGROUND

Plaintiffs below, James A. Snook, Kay Sessoms Hinson, and Betty S. Prevatt, are beneficiaries under a trust indenture created by A.K. Sessoms (hereinafter "AKS Trust") dated August 18, 1937. Under the terms of the trust, the income from the trust properties is to be distributed to the children of the A.K. Sessoms, spouses of deceased male children, and descendants of deceased children until 21 years after the death of the last child. At that time, the corpus is to be distributed to the then surviving grandchildren or descendants of deceased grandchildren, per stirpes. At the time this action was filed, the beneficiaries

* Honorable J. Foy Guin, Jr., U.S. District Judge for the Northern District of Alabama, sitting by designation.

of the trust consisted of five family groups. Their relation to A.K. Sessoms, and their beneficial interests in the AKS Trust are as follows: (1) a son, defendant Alexander Sessoms, owning a 20 percent interest; (2) a daughter, Ruth Sessoms Hughes, owning a 20 percent interest; (3) a daughter, Martha Sessoms Eagleton, owning a 20 percent interest; (4) the children of a deceased son, plaintiffs James A. Snook and Betty S. Prevatt, together owning a 20 percent interest; and (5) the spouse and two children of a deceased son, namely, Mareese Sessoms, spouse, and Dorothy Sessoms Porter and plaintiff Kay Sessoms Hinson, children, collectively owning a 20 percent interest. Plaintiffs are also beneficiaries under a similar trust established by the wife of Alexander Sessoms (hereinafter "ESS Trust").

Prior to 1984, there had been a number of disputes between certain of the beneficiaries, including the plaintiffs, and the trustees of the AKS Trust concerning the management of the trust. At that time, the corpus of the AKS Trust consisted primarily of shares in Timber Products Company (hereinafter "TPC"). These disputes involved among other things allegations of self dealing on the part of the trustees and contentions that insufficient income was being generated. This dispute resulted in the trustees filing a state court action seeking direction and declaratory relief. Ultimately a settlement agreement was entered into between the complaining beneficiaries and the trustees. Under the terms of that settlement agreement, the Trustees agreed to accelerate the sales of timber to offset the costs of the anticipated liquidation of TPC and to provide increased distributions of income. They also agreed to take certain steps designed to eliminate the alleged self dealing. The aggrieved beneficiaries agreed to be precluded "from hereafter making any claim against any of the petitioners based upon any actions or omissions by any of the petitioners in their fiduciary capacities at any time prior to the date of this stipulation." The stipulation was dated May 21, 1984. The stipulation was ratified by the court in an order and final decree signed May 25, 1984. That decree required compliance with the settlement agreement by the signatories and contained the following:

It is FURTHER ORDERED that each respondent named herein who has executed said stipulation is and shall hereafter be barred from prosecuting against any other petitioners herein any claim based upon any act or omission of any of the petitioners herein *in their fiduciary capacities prior to May 21, 1984*, the effect of said stipulation entered into by those parties being to cause a release by said parties of any claims based upon any acts or omissions by said fiduciaries; provided, however, *no such respondent is or shall be barred from making any claim arising from any act or omission about which such respondent had no knowledge prior to May 21, 1984, and which act or omission was intentionally concealed.*

(emphasis added).

As mentioned above, shares in TPC constituted the bulk of the assets of the AKS Trust. TPC was a timber holding company, which owned large tracts of timberlands. These shares provided the primary source of income to the AKS Trust. However, income tax had to be paid on the profits from timber sales twice—first by TPC and then by either the AKS Trust or its beneficiaries. In order to eliminate this double taxation, a plan was devised whereby the AKS Trust would purchase the outstanding shares of TPC that it did not already own and then cause TPC to be liquidated. The result would be that the AKS Trust would own the timberlands formerly owned by TPC. Thereafter, income tax on the profits from the timber sales would be paid only once, either by the AKS Trust or by its beneficiaries.

At the time the plan was conceived, the AKS Trust owned approximately 94 percent of the outstanding stock in TPC. The remaining shares were owned by various members of A.K. Sessoms's family. The plaintiffs were among those family members owning stock in TPC. On July 26, 1984, subsequent to the settlement agreement and consent order, and as a result of

ongoing negotiations with the minority shareholders, the AKS Trust caused a tender offer to be mailed to the minority shareholders. In the offer, the AKS Trust offered to purchase the outstanding shares for $5,000 per share. The offer was conditioned upon all shares being tendered. As a result of this tender offer, the plaintiffs sold their shares in TPC to the AKS Trust.

All of the outstanding shares were tendered and TPC was liquidated by the AKS Trust. After the liquidation, the AKS Trust was the owner of the assets of TPC. TPC was liquidated under Section 333 of the Internal Revenue Code in effect at that time. Pursuant to the provisions of Section 333, the AKS Trust was required to report as income a "liquidating dividend" in the amount of the undistributed earnings of TPC. This "liquidating dividend" was in essence a tax liability with no corresponding income being realized. The tax consequences of the liquidation were passed through to the income beneficiaries.

In early 1985 a dispute arose between the plaintiffs and the trustees of the AKS Trust concerning the tax consequences of the liquidation. The attorney for plaintiffs Snook and Hinson, in a letter dated May 17, 1985, made several demands on the trustees. Among those demands was a request that the AKS Trust borrow an amount equal to the liquidating dividend and distribute the proceeds of that loan to the beneficiaries. The dispute between the plaintiffs and the trustees was not resolved and the plaintiffs instituted an action in the Superior Court of Chatham County, Georgia. The complaint included claims related to the trust accounting methods used in connection with the liquidation of TPC—one of the claims being that the funds used to purchase the shares of TPC should have come from trust principal rather than being paid out of trust income. Because the AKS Trust owned no extensive liquid assets, this amounted to demand that the Trust borrow the funds necessary to finance the liquidation. The state court action was dismissed voluntarily by the plaintiffs and on June 16, 1986 the original complaint in the instant action was filed.

## PROCEEDINGS BELOW

In Counts I, II, and III of their complaint, the plaintiffs assert securities fraud, R.I.C.O., and conspiracy claims. The remainder of their complaint consists of pendent state law claims. On July 31, 1986, the plaintiffs filed a request for production of documents. On August 4, 1986, the defendants filed a motion to dismiss, or for summary judgment and a consent order was entered August 13, 1986 establishing September 5, 1986 as the deadline for the plaintiffs' reply to the motion. On August 25, 1986, the plaintiffs filed a motion for preliminary injunction asking the court to enjoin the defendants from using trust income to pay their attorney's fees. On August 26, 1986, the defendants filed an objection to all of the plaintiffs' requests for production.

On October 2, 1986, the plaintiffs moved for leave to file an amended complaint. Leave was granted November 26, 1986. The district court also entered orders on November 26, 1986 denying the plaintiffs' motion for a preliminary injunction and deferring ruling on the defendants' motion to dismiss or for summary judgment. In its order denying the plaintiffs' motion for a preliminary injunction, the district court stated as follows:

It is the Court's view that this motion raises a question which can be more properly dealt with at a later date, if such should be appropriate, because there appears to be no reason to assume that the Trustees could not reimburse the trust for any attorney's fees which might later be found to have been improperly paid.

The district court, in its order deferring ruling on the defendants' motion to dismiss or for summary judgment, recited the plaintiffs' amendment to the complaint as the reason for declining to rule.

Subsequent to the filing of their amended complaint, the plaintiffs renewed their motion for a preliminary injunction and on February 25, 1987 filed a motion to compel production. The motion to compel was never ruled on by the district court. On March

2, 1987, the defendants renewed their motion to dismiss or for summary judgment. No other motions were filed and no other action was taken by the court until the district court granted the defendants' motion for summary judgment on July 23, 1987. In its memorandum opinion the district court determined that there was no genuine issue of material fact on the plaintiffs' federal claims. Therefore, the court entered summary judgment in favor of the defendants on the plaintiffs' federal claims and dismissed the pendent claims.

In their amended complaint plaintiffs assert three federal causes of action. In Count I of their complaint the plaintiffs assert a securities fraud claim under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b–5). This claim arises out of the tender offer issued in connection with the liquidation of TPC. One of the allegations is that defendants Trust Company of Georgia Bank of Savannah, N.A. (hereinafter "Trust Company") and Alexander Sessoms, with intent to deceive, manipulate and defraud, caused to be sent by U.S. Mail to the plaintiffs a prospectus offering to purchase on behalf of the AKS Trust all minority shares of TPC for $5,000 per share. Plaintiffs allege that the prospectus failed to reveal that "the trustees, Trust Company and Alexander Sessoms, had in their possession information evaluating the shares in an amount in excess of $15,000 per share."

In Count II of their amended complaint, the plaintiffs assert a claim under the Racketeering Influenced and Corrupt Organizations Act (hereinafter "RICO"). 18 U.S.C. §§ 1961–1968. RICO provides for the recovery of treble damages for injury caused by reason of a violation of its substantive provisions. 18 U.S.C. § 1964(c). The plaintiffs claim that defendants Trust Company and Alexander Sessoms violated 18 U.S.C. § 1962(c), one of RICO's substantive provisions, by participating in the affairs of the AKS Trust, TPC, and the ESS Trust, which they allege engaged in a pattern of racketeering activity. The pattern of racketeering activity is alleged to arise by virtue of instances of securities fraud and mail fraud. Among the instances of alleged mail fraud are the mailing of the July 26, 1984 prospectus, the mailing of the proposed stipulation, and the mailing in January 1984 of a letter to plaintiffs' attorney seeking to seduce him from his representation of the plaintiffs.

In Count III of their amended complaint plaintiffs allege that defendants Trust Company, Donald R. Correll, and Alexander Sessoms conspired to violate 18 U.S.C. § 1962(c). This claim is based on 18 U.S.C. § 1962(d) which makes it unlawful for any person to conspire to violate the provisions of 18 U.S.C. § 1962(c).

## DISCUSSION

### A. *Propriety of the District Court's Grant of Summary Judgment*

The primary question presented on appeal is whether the district court properly granted the defendants' motion for summary judgment on the plaintiffs' federal claims. Plaintiffs have argued that the district court's failure to rule on their motion to compel prevented them from discovering evidence that would have established the existence of a genuine issue of material fact. Therefore, they argue that the district court's entry of summary judgment was premature.

The plaintiffs filed a request for production of documents in the district court. The plaintiffs requested, among other things, all documents that were relied upon in preparing any documents or filings in connection with the dissolution of TPC; all documents that related to the valuation of the timberlands; all documents relating to the amount of commissions earned by the trustees prior to and following the liquidation of TPC; and all documents relating to the consequences of paying $5,000 for each outstanding share of TPC. The defendants filed a general objection to all of plaintiffs' requests for discovery and, as noted above, the plaintiffs filed a motion to compel production of the documents requested. The district court never ruled on that motion. The plaintiffs argue that

their inability to obtain the documents requested makes the granting of summary judgment improper.

In reviewing a district court's grant of summary judgment, this court's review is "plenary and is to be conducted utilizing the same legal standards as those imposed upon the district court." *WSB-TV v. Lee,* 842 F.2d 1266, 1269 (11th Cir.1988). The Supreme Court has recently addressed the standards for granting motions for summary judgment. In *Celotex Corp. v. Catrett,* the Court addressed the burden to be placed on the nonmoving party as follows:

> In our view, the plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. 317, 322, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273 (1986) (emphasis added).

This court has recently considered the application of *Celotex,* and other recent Supreme Court cases, to cases in which the nonmoving party has not had an adequate opportunity to conduct discovery. In *WSB-TV v. Lee,* we reviewed the Supreme Court's decisions in *Celotex,* in *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and in *Matsushita Electric Industrial Co. v. Zenith Radio Corporation,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). We concluded that the common denominator of the three cases is "that summary judgment may only be decided upon an adequate record." 842 F.2d at 1269. Because the plaintiffs in *WSB-TV* had been afforded no opportunity for discovery, we held that consideration of the defendant's motion for summary judgment was erroneous.

 This court has often noted that summary judgment should not be granted until the party opposing the motion has had an adequate opportunity for discovery. *E.g., Littlejohn v. Shell Oil Co.,* 483 F.2d 1140, 1145 (5th Cir.1973) (en banc), *cert. denied,* 414 U.S. 1116, 94 S.Ct. 849, 38 L.Ed.2d 743 (noting the high fatality rate of summary dispositions at a time before the facts have been fully developed); *Alabama Farm Bureau Mutual Casualty Co. v. American Fidelity Life Insurance Company,* 606 F.2d 602, 609 (5th Cir.1979), *cert. denied,* 449 U.S. 820, 101 S.Ct. 77, 66 L.Ed.2d 22 ("Summary Judgment should not, therefore, ordinarily be granted before discovery has been completed."); *Murrell v. Bennett,* 615 F.2d 306, 310 (5th Cir.1980) (citing *Alabama Farm Bureau* ). The party opposing a motion for summary judgment has a right to challenge the affidavits and other factual materials submitted in support of the motion by conducting sufficient discovery so as to enable him to determine whether he can furnish opposing affidavits. *Parrish v. Board of Commissioners of the Alabama State Bar,* 533 F.2d 942, 948 (5th Cir.1976). If the documents or other discovery sought would be relevant to the issues presented by the motion for summary judgment, the opposing party should be allowed the opportunity to utilize the discovery process to gain access to the requested materials. *Id.* Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests. *Cowan v. J.C. Penney Company, Inc.,* 790 F.2d 1529, 1532 (11th Cir.1986).

The issue of inadequate discovery was called to the district court's attention by the parties in their briefs addressed to the motion to compel. In their response to the plaintiffs' motion to compel, defendants asserted that a ruling in their favor on the pending motion to dismiss or for summary judgment would render moot any discovery issue.[1] Plaintiffs responded to this assertion by reminding the district court that "motions for summary judgment are premature and should not be granted until the

---

**1.** If the district court had treated the motion as one to dismiss the complaint for failure to state a claim, this assertion might be true. However, the court considered factual matters outside the pleadings submitted by the defendants. Therefore, the procedures governing motions for summary judgment were invoked. *See* Rule 12(b), Federal Rules of Civil Procedure.

party opposing such a motion is permitted to make discovery essential to his case." Therefore, the district court should have been aware of the plaintiffs' contention that they had not been able to obtain, through discovery, evidence essential to their opposition to the motion for summary judgment. The discovery requested was clearly relevant to the pending motion for summary judgment, both as to the securities fraud and RICO counts.

 In this Circuit, a party opposing a motion for summary judgment need not file an affidavit pursuant to Rule 56(f) of the Federal Rules of Civil Procedure in order to invoke the protection of that Rule. In *Littlejohn*, the court "[o]ut of an abundance of caution and to prevent a possible injustice," held that an affidavit was not required to invoke the protection of Rule 56(f). 483 F.2d at 1146. The court concluded that "the written representation by [plaintiff's] lawyer, an officer of the court, is in the spirit of Rule 56(f) under the circumstances. Form is not to be exalted over fair procedures." *Id.* Requiring the party opposing a motion for summary judgment to explicitly and unequivocally invoke the protection of Rule 56(f) through the means of an affidavit would provide certainty to district courts. However, the law of this Circuit recognizes that the interests of justice will sometimes require a district court to postpone its ruling on a motion for summary judgment even though the technical requirements of Rule 56(f) have not been met.

 In *Cowan*, this court held that the nonmovant's "failure to file a motion under Fed.R.Civ.P. 56(f) to foreclose entry of summary judgment [did] not invalidate her claim that the entry of that judgment was error." 790 F.2d at 1532. However, the party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery. *Id.* at 1530. In *Cowan*, the court concluded that the nonmovant properly apprised the district court of the outstanding discovery request.

[W]e find that prior to the entry of summary judgment she had properly brought to the district court's attention that the discovery response from World Shoe Corp. was still outstanding. The record clearly indicates that Cowan sought an order to compel World Shoe's response which was granted by the district court on November 8, 1984.

*Id.* at 1532.

In the case at hand, plaintiffs' filed a motion to compel, which was briefed extensively. The motion sought to compel the production of documents relevant to the pending motion for summary judgment. Therefore, plaintiffs properly directed the district court's attention to the fact that their discovery requests were still outstanding. The district court should have ruled on the motion to compel prior to entering summary judgment for the defendants. Its failure to rule on the motion to compel circumvented the policy underlying discovery in cases in which a summary judgment motion is filed.

[T]he whole purpose of discovery in a case in which a motion for summary judgment is filed is to give the opposing party an opportunity to discover as many facts as are available and he considers essential to enable him to determine whether he can honestly file opposing affidavits.

*Parrish*, 533 F.2d at 948. By failing to rule on the motion to compel, the district court deprived the plaintiffs' of their right to utilize the discovery process to discover the facts necessary to justify their opposition to the motion. It is clear that many of the documents requested are relevant to the issues raised by the defendants' motion for summary judgment. It is also clear that many of the requested documents are discoverable. Accordingly, the entry of summary judgment and dismissal of the pendent state law claims was improper and must be reversed. On remand the district court should consider the plaintiffs' motion to compel in light of the rules governing discovery and should order the requested documents produced as appropriate. Once there is an adequate record, the district court may again consider the defendants' motion for summary judgment.

B. *Propriety of the District Court's Denial of Preliminary Injunction*

The district court's order denying the plaintiffs' motion for a preliminary injunction recited that the motion "raises a question which can be more properly dealt with at a later date, if such should be appropriate, because there appears to be no reason to assume that the Trustees could not reimburse the trust for any attorney's fees which might later be found to have been improperly paid." This appears to represent nothing more than a decision to defer the ruling until a later time. The plaintiffs renewed their motion subsequent to the amendment of their complaint.

Because the plaintiffs' motion for a preliminary injunction has been renewed, we do not find it necessary to reverse the district court's denial of the plaintiffs' motion for a preliminary injunction. It may well be that discovery will reveal additional evidence relevant to the court's consideration of the plaintiffs' renewed motion for preliminary injunction. On remand, the district court should consider the plaintiffs' renewed motion for preliminary injunction in a timely manner and issue findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## CONCLUSION

We therefore REVERSE the district court's order granting summary judgment in favor of the defendants and dismissing the pendent claims, and REMAND the action for further proceedings not inconsistent with this opinion.