Cheryl L. HARTMAN, as Personal Representative of the Estate of Mark J. Douglas, on behalf of the Estate and on behalf of the survivor, Jennifer Douglas, a minor, Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES, INC., formerly named and known as ARA Health Services, Inc., d/b/a Correctional Medical Systems, a Missouri corporation registered to do business in Florida, Jeff Schultz and Don Hunter as Sheriff of Collier County, Defendants.

No. 95–149–CIV–FTM–24D.

United States District Court,
M.D. Florida,
Fort Myers Division.

Dec. 30, 1996.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

SWARTZ, United States Magistrate Judge.

THIS CAUSE is before the Court on the Defendants, CORRECTIONAL MEDICAL SERVICES, INC.'s (CMS), JEFF SCHULTZ's (Schultz) and DON HUNTER's (Sheriff Hunter) Motions for Summary Judgment. In these motions, the defendants raise the defense of qualified immunity. The Court has carefully reviewed the submissions of the parties. The parties consented to proceed before a United States Magistrate Judge for all proceedings.

### FACTS ALLEGED IN THE SECOND AMENDED COMPLAINT

In the Second Amended Complaint, plaintiff alleges the following facts against the defendant Schultz. On November 5, 1993, Mark J. Douglas was incarcerated in the Collier County Jail awaiting trial. Mr. Douglas met with Schultz whose title and position were as a clinical psychologist. However, Schultz was not licensed in the State of Florida as a clinical psychologist. Both the Intake Record and the Suicide Screening Report indicated that on November 5, 1993, Mr. Douglas was placed on "strict suicide precaution" by Schultz so as to permit him to assess Mr. Douglas' suicide potential and need for mental health services. The Mental Health Screening Report, prepared and signed by Schultz on November 5, 1993, notes suicide ideation with intent, and a diagnosis of adjustment disorder with depression. The Receiving Screening Form, also dated November 5, 1993 notes a suicide attempt in 1988, mentions that three close friends of Mr. Douglas had committed suicide, and that Mark Douglas "is contemplating suicide." The form calls for a "later medical referral." The Intake Mental Health Screening shows no "disposition" ac-

tion taken. On November 8, 1993, and all times thereafter, Mark Douglas was removed from the suicide watch by Schultz and confined in a general population cell that was not equipped for a known suicidal inmate. Instead, the cell contained several known instrumentalities for suicides, such as clothing, sheets, towels, and various means and instrumentalities from which to tie and suspend those items. At the time of his removal from the suicide watch, Mr. Douglas had not been seen by a psychiatrist or any other licensed mental health provider. On December 8, 1993, defendant Schultz saw Mark Douglas and charted that he was upset over his girlfriend's testimony in court and that he had been thinking of suicide. The diagnosis by Schultz was that Mark Douglas was significantly depressed, had sleep difficulty, and an impaired appetite. Further, Schultz charted that he would assess Mark Douglas the following week. He did not. Nor did Schultz refer Mark Douglas to a psychiatrist or other licensed mental health professional. A progress note by Schultz on December 14, 1993, states that Mark Douglas was mildly dysphoric but much improved with no suicide ideation. Schultz noted that Mark Douglas declined psychiatric evaluation and Schultz was to monitor Mr. Douglas' progress. Schultz thereafter never monitored Mark Douglas. Mark Douglas attempted suicide in the Collier County Jail on December 24, 1993, was taken to a hospital and later a nursing home where he remained in a vegetative state until his death on July 17, 1994. The plaintiff alleges that Schultz knew of plaintiff's mental health history, including his prior suicide attempts and knew that there was a substantial risk that Mr. Douglas would attempt suicide. Despite this knowledge, defendant Schultz failed to intervene and provide any assistance to Mark Douglas, failed to refer Mark Douglas to a psychiatrist (or other appropriate mental health professional), failed to provide Mark Douglas with any medication, failed to regularly monitor Mark Douglas' mental health needs, and, for all practical purposes, simply abandoned Mark Douglas as a patient. According to the plaintiff, all of these allegations amounted to deliberate and callous indifference on the part of Schultz and were the direct and proximate cause of Mr. Douglas' suicide.

In the Second Amended Complaint, the plaintiff alleges the following facts against the defendant CMS. The above actions and omissions of Schultz were taken in accordance with the established policies, practices and procedures of CMS. The officers, servants, agents, employees and contractors of CMS knew of Mark Douglas' prior suicide attempts and mental health history while in the jail. With that knowledge, the agents, servants and employees of CMS, abandoned Mark Douglas as a patient. CMS is responsible for the policies, practices, procedures and customs which govern the operation of the mental health services at the Collier County Jail. CMS was deliberately indifferent to the serious mental health needs of Mark Douglas in that the policy, practice, procedure and custom in effect at the Collier County Jail, at all times material to this action, permitted a person with no more than a Master's Degree, and with no professional licenses:

(A) to have primary responsibility for the care of seriously mental ill inmates, and to determine (1) when an inmate should be referred to a psychiatrist or other qualified mental health professional, (2) when an inmate with an extensive history of mental health problems should be placed on suicide precautions, (3) when an inmate with an extensive history of mental health problems should be taken off of suicide precautions, (4) when an inmate with an extensive history of mental health problems, and a record of violent crimes, should or should not be deemed a danger to himself or others, and (5) when an inmate with an extensive history of mental health problems should or should not be deemed to be acting in an appropriate manner so as to preclude the need for referral to a psychiatrist;

(B) to use his own discretion as to when to consult with the jail psychiatrist, or any other physician, about the mental health status of an inmate with an extensive history of mental health problems; and

(C) to decide for himself whether or not to report to the jail psychiatrist, or any

other physician, that a patient with an extensive history of mental health problems was expressing thoughts of suicide. In addition, the policy, practice, procedure and custom in effect at the Collier County Jail, at all times material this action, did not require the contract psychiatrist, the jail physician nor any other physician to supervise Schultz. Finally, the plaintiff alleges that these policies, practices, procedures and customs which permit non-medical staff to determine the need for and the course of treatment of an inmate known to have extensive and serious mental health problems are policies, practices, procedures and customs which are deliberately indifferent to the serious medical needs of prisoners.

In the Second Amended Complaint, the plaintiff alleges the following facts against the defendant Sheriff Hunter. Sheriff Hunter operated and controlled the Collier County Jail and was under a nondelegable duty to treat and render medical and mental health assistance to all inmates, including decedent Mark Douglas. CMS was under contract with Sheriff Hunter to provide medical and mental health services to inmates in his jail. Sheriff Hunter was negligent in failing to properly supervise and ensure compliance with the contract by CMS and in failing to ensure that properly licensed mental health personnel were fulfilling the terms and conditions of the contract. Sheriff Hunter knew or should have known that CMS and Schultz were not adequately and competently performing this contractual duties to provide mental health services, as evidenced by the recent suicide attempt by at least one other inmate. Sheriff Hunter remains liable for the constitutional deprivations caused by the policies or customs of CMS because he has delegated final decisions to CMS. Therefore the acts, policies and customs of CMS become the official policy of Sheriff Hunter. In addition, Sheriff Hunter was negligent through his failure to properly train his correctional officers and staff to recognize and report the suicidal ideations of inmates. Sheriff Hunter is liable to the plaintiff for the negligence of his officers, agents, servants, employees, and contractors, one or more of who negligently performed their ordinary duties.

## STANDARD FOR SUMMARY JUDGMENT

Under Fed.R.Civ.P. 56(c) a motion for summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The burden of establishing the absence of a genuine material fact is on the moving party. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) Once this burden is met the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553. When the nonmoving party fails to make a sufficient showing of an essential element of the case to which the nonmoving party has the burden of proof, the moving party is entitled to a judgment as a matter of law.

In making this determination, the Court must view all of the evidence in a light most favorable to the non-moving party and resolve all reasonable doubts in that party's favor. *Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989), *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has determined the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the universe of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one. *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

"Thus, if a reasonable fact finder evaluating the evidence could draw more than one infer-

ence from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion." *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590 (11th Cir.1995), *Augusta Iron and Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir.1988). A dispute regarding a material fact is "genuine" if there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The Court must determine if there is a sufficient disagreement of facts to submit the case to the jury or whether it is one-sided and that one party must prevail as a matter of law. *Id.* at 251–252, 106 S.Ct. at 2511–2512.

## ANALYSIS

### SCHULTZ'S MOTION FOR SUMMARY JUDGMENT

In his Motion for Summary Judgment, Schultz states that he was entitled to and raised the defense of qualified immunity claiming that the plaintiff has not produced any evidence, expert or otherwise that shows Schultz was deliberately indifferent to the serious medical needs of Mark Douglas or that Schultz was aware of any substantial risk of serious medical harm to Douglas. In a motion for summary judgment, this Court must view the facts in the light most favorable to the plaintiff. *Dolihite v. Maughon By and Through Videon*, 74 F.3d 1027 (11th Cir.1996).

The facts in the instant case, are very similar to the facts set forth in *Dolihite* supra and *Greason v. Kemp*, 891 F.2d 829 (11th Cir.1990). In each of those cases, summary judgment was denied by the District Court and affirmed by the Eleventh Circuit although the Defendants who were the primary care giver raised the defense of qualified immunity. In this case, Schultz, who was not a licensed psychologist, nonetheless was given the authority by CMS, to place or remove inmates from the suicide watch who were in Collier County Jail. Two expert witnesses, both psychiatrists, testified in their depositions that Schultz was not qualified for such a responsibility. Dr. Dennis F. Koson, who is plaintiff's expert stated that Schultz was not qualified to be the sole determiner as to which inmates should see a psychiatrist, and Dr. Daniel J. Sprehe, Sheriff Hunter's expert, who is a forensic psychiatrist testified in his deposition that Schultz should have obtained a psychiatrist consult for Mr. Douglas or a referral should have been made by CMS.

It appears that Schultz was motivated in several respects concerning his handling or mishandling of Mr. Douglas' case. First, CMS is a private, for-profit company. The policy of private corporations was precisely stated by a District Court in Tennessee:

> In the case of a private for-profit corporation hired to perform a private function, there is an increased risk that the corporation's actions will diverge from the public interest ... unlike public employees, corporate employees are always compelled to make decisions that will benefit their shareholders, without any direct consideration for the best interest of the public ... Especially when a private corporation is hired to operate a prison, there is an obvious temptation to skimp on civil rights whenever it would help to maximize shareholder's profits. *Manis v. Corrections Corp. of America*, 859 F.Supp. 302 (M.D.Tenn., 1994).

It is obvious that CMS as a private contract corporation was in the business of earning money handling the medical attention needed by the inmates of jails throughout Florida and elsewhere, and was responsible to its owners and stockholders to make a profit. CMS's policies therefore were to take inmates off suicide watch as early as possible to avoid use of extra manpower, and to avoid using the contract psychiatrist unless absolutely necessary. In fact, Schultz was almost fired by his previous supervisor for not taking an inmate off of a suicide watch fast enough. The second motivating factor on the part of Schultz was that he was preparing to leave for his own holiday vacation. Apparently Schultz was so excited about his vacation that he did nothing to warn any of the medical staff about Douglas's depression or

thoughts of suicide, and only left a list of his caseload with one of the nurses.

It is clear to this Court from the facts adduced in the case that there were more than sufficient warnings that Mr. Douglas was a serious suicidal risk, and that Schultz chose to ignore those warnings. In the *Greason*, supra and *Dolihite*, supra, cases, such actions or non-actions were deemed to constitute deliberate indifference. After viewing the pleadings, depositions and other evidence now before this Court, on Schultz's claim of qualified immunity, there remains a genuine issue as to material facts concerning whether Schultz was deliberately indifferent to the medical needs of Mark Douglas, and therefore, the motion for summary judgment must be denied.

## CMS'S MOTION FOR SUMMARY JUDGMENT

The Court must now address the Motion for Summary Judgment filed by CMS. Although both Schultz and CMS assert the defense of qualified immunity in their summary judgment motions, the District Court in this case, prior to the parties consent to proceed before a Magistrate Judge, denied CMS's right to raise that defense because it was a private corporation. However, because of recent decisions issued by the Eleventh Circuit Court of Appeals and District Courts in the Middle District of Florida, and with the consent of the Honorable Susan C. Bucklew, United States District Judge, it was determined that this issue must be revisited. The law regarding qualified immunity has been in a state of flux regarding private corporations and their employees which have contracted with the state, county or as in this case with the sheriff to provide medical services for a public institution such as the Collier County Jail. The Supreme Court set forth a narrow prohibition in *Wyatt v. Cole*, 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992) which denied qualified immunity to private defendants faced with a § 1983 liability for invoking a state replevin, garnishment or attachment statute. Following that decision the Eleventh Circuit Court of Appeals issued its opinion in *Burrell v. Board of Trustees of Ga. Military College*, 970 F.2d 785, 794–95 (11th Cir.1992) in which the

Court appeared to apply the Supreme Courts narrow prohibition of qualified immunity to private defendants in § 1983 cases. A recent Eleventh Circuit case, *Dolihite v. Maughon By and Through Videon*, 74 F.3d 1027 (11th Cir.1996) has shown however, that the Court has continued to follow its previous ruling expressed in *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700 (11th Cir.1985) that private physicians and private corporations under contract with the state, county or sheriff constitute state action and are subject to the liability of § 1983, and because they are subject to liability under § 1983, the private individuals and corporations are also entitled to raise qualified immunity as a defense to liability.

■ The fact that CMS can raise the defense of qualified immunity however, does not necessarily mean that its motion for summary judgment should be granted as CMS must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R.Civ. P. 56 *Celotex Corp. v. Catrett*, supra. On the other hand, to counter a motion for summary judgment, the plaintiff must point to evidence in the record, or present additional factual evidence sufficient to withstand a directed verdict motion made at trial. *Celotex* at 324, 106 S.Ct. at 2553. In this case, the plaintiff's allegations are that the policy, practice, procedure and custom of CMS at the Collier County Jail permitted a person with a masters degree and no other professional licenses, to have primary responsibility for the care of seriously mentally ill patients. The policy of CMS also permitted that person, Schultz, to determine when an inmate should be referred to a psychiatrist or other qualified mental health professional and when an inmate with a history of mental health problems should be placed on suicide precautions. Two of the expert psychiatrists who testified in their depositions in this case, testified that Schultz was not qualified to be the sole determiner as to which inmates should see a psychiatrist. This Court has therefore determined that the plaintiff's allegations together with the expert testimony of Dr. Dennis F. Koson and Dr. Daniel S. Sprehe is sufficient to raise a genuine issue of material

fact, as to whether the policies of CMS concerning the care of the mental health of the Collier County Jail inmates constituted a policy of deliberate indifference. Therefore, the Motion for Summary Judgment by CMS must be denied.

## SHERIFF HUNTER'S MOTION FOR SUMMARY JUDGMENT

 Sheriff Hunter's Motion for Summary Judgment must also be denied at this time because of his non-delegable duty to provide medical care to inmates which duty is not absolved by his contract with CMS. *Ancata v. Prison Health Services, Inc.*, supra. The Ancata Court held that:

[T]he Federal Courts have consistently ruled that governments, state and local have an obligation to provide medical care to incarcerated individuals. This duty is not absolved by contracting with an entity such as Prison Health Services. Although Prison Health Services has contracted to perform an obligation owed by the county, the county itself remains liable for any constitutional deprivations caused by the policies of the Health Service. In that

sense, the county's duty is non-delegable. Citing *Wilson v. Taylor*, 733 F.2d 1539, 1545 (11th Cir.1984).

Here due to the contract between Sheriff Hunter and CMS, Sheriff Hunter's liability is based solely on the liability of CMS. Again, as with CMS, there is a genuine issue of material fact regarding the deliberate indifference of CMS and therefore, Sheriff Hunter's Motion for Summary Judgment must be denied.

It is hereby ORDERED:

That the Motions for Summary Judgment (Docs. 42, 73, 75, 83) filed by Schultz; CMS and Sheriff Hunter are hereby denied.

That the Motion for Rule 56 Additional Time to Respond to Motion for Summary Judgment (Doc. 93) is now Moot.