Rebecca PORTER, Plaintiff,

v.

SMITHKLINE BEECHAM CORPO-
RATION d/b/a GlaxoSmithK-
line, Defendant.

No. 8:04–CV–403–T–24TBM.

United States District Court,
M.D. Florida,
Tampa Division.

May 31, 2005.

■■■■■■■■■■■■■■■■

———

John V. Tucker, Anderson & Tucker, St. Petersburg, FL, for plaintiff.

### *ORDER*

BUCKLEW, District Judge.

This cause comes before the Court on cross motions for summary judgment, Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline's ("Defendant") Motion for Summary Judgment (Doc. No. 30) and Rebecca Porter's ("Plaintiff") Motion for Summary Judgement. (Doc. No. 40). Plaintiff opposes Defendant's motion. (Doc. No. 32). Defendant opposes Plaintiff's motion. (Doc. No. 45).

### I.  Background

On March 3, 2004, Plaintiff initiated this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (Doc. No. 1). Plaintiff seeks a judgment allowing her to recover long term disability benefits from May 31, 2001 to the date of the filing of this lawsuit, pre-judgment interest on each monthly payment from the date it became due until the date it is paid, attorney's fees and costs incurred in this action, and a declaration that Plaintiff's same claim for benefits continues after the last date of benefits awarded by the Court without the need to file a new application. (Doc. No. 1 at 4–5).

Plaintiff worked for Defendant as a laboratory technician from December 18, 1978 until April 11, 1997. (R. 377).[1] Defendant offered all of its employees various bene-

fits, including long term disability ("LTD") benefits. The terms of the plan that applies to Plaintiff are contained in two parts, a Summary of the Plan Description dated December 1993 and an ERISA information Section dated May 1994. In accordance with the LTD plan, Defendant, as plan administrator, delegated to a third party the responsibility of being the claims administrator. The claims administrator was responsible for making the initial claims determinations and deciding the initial appeals. However, the plan stated that Defendant

> reserves the absolute right to interpret the provisions of the ... welfare benefit plans, to make determinations of fact and eligibility for benefits, and to decide any dispute that may arise regarding the rights of employees, and their dependents or beneficiaries, under these plans.

(Doc. No. 30, Exhibit A).

In 1997, Plaintiff petitioned for LTD benefits complaining of fibromyalgia (chronic pain), asthma, and depression. On October 13, 1997, Hartford Life, the claims administrator at that time, approved Plaintiff's claim for LTD benefits. (R. 749–50). The LTD plan defines "Total Disability" as:

- During the first two years of LTD benefits—you are unable to perform the duties of *your job*

- After the first two years of LTD benefits—you are unable to perform *any job* for which you are reasonably qualified or may become qualified because of your education, training or experience.

(Doc. No. 30, Exhibit B)(emphasis added). Hartford Life stated that in order to qualify for benefits beyond the first two years

---

**1.** Citations to the Administrative Record are designated with "R" followed by the stamped page number.

(after October 3, 1999), Plaintiff must continue to satisfy the definition of "Total Disability" as defined in the plan. (R. 749).

On December 3, 1999, UnumProvident[2] ("Provident") informed Plaintiff that the intial two years had passed and proof of her disability needed to be updated. (R. 603). In March 2000, Dr. Jerald Zakem, Plaintiff's physician, filled out a Physical Capacities form at Provident's request. (R. 587). Dr. Zakem indicated that Plaintiff was capable of walking, standing, and driving for up to one hour at a time, and sitting for up to four hours at a time. Dr. Zakem also indicated that Plaintiff could frequently lift up to five pounds and occasionally lift up to ten pounds. (R. 587). However, Dr. Zakem stated that Plaintiff "cannot make 8 hr day." (R. 589).

In October 2000, Michele Lawson, a registered nurse from GENEX Services, visited Plaintiff at her home as a representative of Provident. During the interview, Plaintiff told Nurse Lawson the extent of her medical condition and detailed her daily activities. (R. 499–505). Nurse Lawson wrote that Plaintiff usually started her day by feeding and watering her horses. Then she would walk her horses with a lead rope. Nurse Lawson reported that Plaintiff would ride into town with her mother to buy groceries or rent a video and folds laundry and helps clean the house. (R. 499—505).

On May 29, 2001, after two and a half years of receiving LTD benefits, Provident informed Plaintiff that she would not be paid LTD benefits beyond May 31, 2001. (R. 184–85). Provident based its decision on Dr. Zakem's assessment of Plaintiff's physical abilities, Michele Lawson's site visit to Plaintiff's home, and Provident's own clinical staff review of Dr.

Zakem's medical notes. (R. 184–186). Provident concluded that there was "no clinical evidence to support the restriction and limitations ... [and] [t]he records do not preclude [her] from performing gainful employment." (R. 185). Provident also stated that a Transferable Skills Analysis and Labor Market Survey was completed in May 2000, and several jobs were identified that met Plaintiff's restrictions and earning requirements. (R. 185). Provident informed Plaintiff that she could appeal this decision.

Plaintiff appealed the decision to Provident. Plaintiff provided a Functional Fibromyalgia Residual Functional Capacity Questionnaire filled out by Dr. Farrukh Zaidi on October 25, 2001. (R. 303–308). Dr. Zaidi concluded that Plaintiff had all 18 fibromyalgia tender points. (R. 303). He also concluded that Plaintiff was incapable of even low stress at work and could only continuously sit or stand for ten minutes at a time. (R. 306).

Provident conducted an internal clinical review that was performed by Pat Branham, RN and Les Kertay, Ph.D. (R. 177–183). Pat Branham concluded that Dr. Zakem's diagnosis was not consistent with an inability to work, and that Dr. Zaidi's findings as stated on the Functional Capacity Questionnaire appeared inconsistent with Plaintiff's own description of her daily activities. (R. 179–180). Pat Branham noted in her report that Dr. Zakem had stated that "I feel that she could try to return to work on a four hour a day basis. There is the availability of a work conditioning program and I think she would do well with this." (R. 179). Les Kertay concluded that Plaintiff's psychiatric condition and physical condition would not pre-

**2.** Defendant transferred the administration of the LTD plan to Provident during the course of Plaintiff's appeal.

clude her from performing a sedentary position. (R. 182).

On March 19, 2002, Provident upheld its previous decision denying Plaintiff LTD benefits. (R. 187). Provident did acknowledge that its Board Certified Internist and Rhumatologist found that Plaintiff might meet the criteria for fibromyalgia; however, Defendant's internist noted that there was nothing objective in the file to prevent Plaintiff from performing the duties of her occupation. (R. 189). Provident listed five sedentary positions found by the Transferable Skills Analysis which Provident claimed Plaintiff could reasonably be fitted to because of her education, training, or experience; therefore, Provident concluded that Plaintiff was not "unable to perform any job." Provident informed Plaintiff that she could appeal the decision. (R. 189).

Plaintiff appealed for a second time. On January 15, 2003, Provident again upheld its decision to deny Plaintiff LTD benefits. (R. 272–275). Provident noted that while Provident's internal review found that Dr. Zaidi indicated that Plaintiff could not sit for more than ten minutes at a time, that this was inconsistent with Nurse Lawson's report concerning Plaintiff's daily activities. Therefore, Provident stated that Plaintiff failed to meet the definition of Total Disability under the plan because she was not "unable to perform any job." (R. 273–274).[3] Provident informed Plaintiff that she could appeal this decision to the plan administrator, SmithKline Beecham. (R. 274).

Plaintiff appealed to Defendant, the plan administrator. Defendant instructed Dr. Gregg Stave, Defendant's Director of Strategic Health Planning, to review Plaintiff's file and medical records. Dr.

Stave concluded that an independent medical examination was necessary to determine the accuracy of Plaintiff's medical and psychiatric diagnosis. (R. 826). On September 19, 2003, Defendant informed Plaintiff that it had completed its review of Provident's decision to deny Plaintiff LTD benefits and found that while Provident had a basis for denying the claim, Plaintiff had submitted information that was contrary to Provident's finding. (R. 817). Defendant stated that:

> Consequently, we are prepared to suspend a final determination in this matter if Ms. Porter is willing to submit to an independent medical evaluation as soon as possible. The cost of the examination will be paid by GlaxoSmithKline .... If the findings of this evaluation support Ms. Porter's claims in her October 22nd letter sufficiently to demonstrate her continuing disabled status, we will reinstate long term disability benefits retroactive to the LTD claim termination date.

(R. 817). Plaintiff's October 22, 2001 letter was a nine page letter written to her attorney and was included in her file. (R. 798–806). In the letter, Plaintiff detailed her condition, and how the report filed by Nurse Lawson was not an accurate depiction of her daily activities and physical condition. (R. 798–806).

On October 10, 2003, Plaintiff's counsel sent a letter to Defendant stating that Defendant did not have a right under the terms of the plan to request an independent medical evaluation ("IME"). Plaintiff's counsel stated that the plan only authorized an IME before the termination of benefits. Furthermore, Plaintiff's counsel stated that under the terms of the plan,

---

**3.** The Court notes that Provident did not use the 1993 LTD definition of "Total Disability;" rather, it used the 2000 LTD definition. The 2000 definition states that in addition to being unable to work at all in any job for which you are or may become suited by education, training, or experience, that the participant is "under a Physician's Care." (R. 273).

only Provident, the claims administrator, had the authority to request an IME, not Defendant.[4] (R. 814–815).

On October 22, 2003, Defendant informed Plaintiff that under the terms of the 1993 plan Defendant did have the authority, as plan administrator, to request an IME during the pendency of a claim for LTD benefits. (R. 812–813). The plan states that:

> From time to time (at least annually) while you are receiving LTD benefits, you will be asked to submit medical proof satisfactory to the Claims Administrator that you are still totally disabled. This may include submitting to an independent medical examination by a physician designated by Prudential Insurance Company [claims administrator] at company expense. If you do not submit to a timely independent medical examination or if you do not provide timely and satisfactory proof of continued disability, your benefits will be suspended.

(Doc. No. 30, Exhibit B at 6).[5]

Defendant gave Plaintiff another opportunity to submit to an IME and stated that if she refused to submit to the requested IME, Defendant would have no choice but to make the final determination denying Plaintiff's claim. (R. 812–813). Plaintiff did not submit to the requested IME. This lawsuit followed.

## II.  Standard of Review

### a.  Motion for Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. 2548. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman,* 873 F.2d 256 (11th Cir.1989); *Samples on Behalf of Samples v. City of Atlanta,* 846 F.2d 1328, 1330 (11th Cir.1988). The Eleventh Circuit has explained the reasonableness standard:

> In deciding whether an inference is reasonable, the Court must "cull the uni-

---

**4.** The Court notes that in the letter, Plaintiff's counsel makes reference to the 2000 plan, not the 1993 plan.

**5.** The Court notes that the claims administrator at the time of the 1993 plan was Pru-

dential Insurance Company. The record is unclear as to when Hartford Life assumed responsibility as claims administrator. Provident assumed claims administrator responsibilities from Hartford Life prior to December 3, 1999.

verse of possible inferences from the facts established by weighing each against the abstract standard of reasonableness." [citation omitted]. The opposing party's inferences need not be more probable than those inferences in favor of the movant to create a factual dispute, so long as they reasonably may be drawn from the facts. When more than one inference reasonably can be drawn, it is for the trier of fact to determine the proper one. *WSB–TV v. Lee,* 842 F.2d 1266, 1270 (11th Cir.1988).

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *See Augusta Iron & Steel Works v. Employers Ins. of Wausau,* 835 F.2d 855, 856 (11th Cir.1988). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

### III. Discussion

#### a. Standard of Review for ERISA Claims

The United States Supreme Court, in *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), set forth the following standard of review that a court must apply when reviewing a denial of ERISA benefits:

> Consistent with established principles of trust law ... a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard un-

less the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.

*Id.* at 115, 109 S.Ct. 948. The Eleventh Circuit has adopted three standards of review for plan interpretations: (1) *de novo,* applicable where the plan administrator is not afforded discretion, (2) arbitrary and capricious, applicable when the plan grants the administrator discretion, and (3) heightened arbitrary and capricious, applicable when the plan grants the administrator discretion and there is a conflict of interest. *Paramore v. Delta Air Lines, Inc.,* 129 F.3d 1446, 1449 (11th Cir.1997).

In order to determine the correct standard of review, the Court must first determine whether the plan administrator was expressly delegated discretionary authority in the plan documents. If the court finds that the plan documents grant the plan administrator discretion then "the court applies arbitrary and capricious review and possibly heightened arbitrary and capricious review." *HCA Health Services of Georgia, Inc. v. Employers Health Insurance Company,* 240 F.3d 982, 993 (11th Cir.2001). The heightened arbitrary and capricious standard is applied "where a company both administers and funds a plan." *Williams v. BellSouth Telecommunications, Inc.,* 373 F.3d 1132, 1135 (11th Cir.2004). The Eleventh Circuit has held that discretionary authority must be expressly given by the plan. *See Kirwan v. Marriott Corp.,* 10 F.3d 784, 788 (11th Cir.1994).

The plan documents clearly reflect that Defendant, as plan administrator, was expressly delegated discretionary authority. As previously stated, the plan states that Defendant "reserves the absolute right to interpret the provisions of the ... welfare benefits plans, to make determinations of fact and eligibility for benefits,

and to decide any dispute that may arise regarding the rights of employees." (Doc. No. 30, Exhibit A). Plaintiff argues that the *de novo* standard of review applies because even if the plan documents give Defendant express discretionary authority, Defendant failed to exercise that discretion. (Doc. No. 40 at 8). However, the record reflects that Defendant did exercise its discretionary authority. Defendant's September 19, 2003 letter to Plaintiff specifically stated that Defendant recognized that Provident's findings conflicted with Plaintiff's assertions concerning her medical conditions. Thereafter, Defendant determined that an IME was needed to gather additional information before an ultimate decision could be made about Plaintiff's claim. (R. 817). This is a clearly an exercise of discretion.

Plaintiff further argues that Defendant failed to exercise its discretion, because Judith Lynch, vice president of U.S. benefits for GlaxoSmithKline and the final decision maker as to a participant's claim, "blindly" accepted Dr. Stave's recommendation. (Doc. No. 32 at 19). The Court rejects this argument. Since Judith Lynch is not a physician, it is not unreasonable for her to rely on Dr. Stave's recommendation as to Plaintiff's medical records and physical condition. Furthermore, Judith Lynch decided to suspend the final decision as to Plaintiff's claim until more information could be obtained. Judith Lynch also made the decision to retroactively reinstate Plaintiff's benefits if it was later determined her assertions as to her medical condition were accurate.

(R. 817–818). This also constitutes an exercise of discretion.

■ However, the plan is self insured by Defendant, and Defendant uses money from its general assets to cover the costs of the plan. (Doc. No. 36, Lynch depo. at 23–24). Therefore, the Court finds that Defendant suffers from an inherent conflict of interest, and the Court must apply the "heightened" arbitrary and capricious standard of review.[6]

■ Applying the heightened arbitrary and capricious standard, the Court must first evaluate whether the decision made by the ERISA administrator was "wrong." *HCA,* 240 F.3d at 993. A decision is wrong if after an initial review, the court disagrees with the plan administrator's decision or plan interpretation. *Id.* at 994. If the court determines that the plan administrator made the "wrong" decision, then the court must "determine whether 'reasonable' grounds supported it." *Williams,* 373 F.3d at 1138. Under the heightened arbitrary and capricious standard of review, "[a] wrong but apparently reasonable interpretation is arbitrary and capricious if it advances the conflicting interest of the administrator at the expense of the claimant." *Id.*

b.   Determination of Plaintiff's Claim [7]

Plaintiff contends that Defendant's final decision to terminate her LTD benefits was wrong. (Doc. No. 32 at 12). After Plaintiff refused to submit to Defendant's request for an IME, Defendant sent Plain-

---

6.   The standard of review applies to both plan interpretations and factual determinations. *See Williams,* 373 F.3d at 1135.

7.   Defendant moved for summary judgment based on two issues: 1) Plaintiff sued the wrong party and 2) Plaintiff violated the terms of the LTD plan by refusing to submit to an IME. (Doc. No. 30 at 7 and 10). On

March 29, 2005, this Court granted the parties' stipulation substituting SmithKline Beecham Corporation, d/b/a GlaxoSmithKline as Defendant in this matter in place of Provident Life. (Doc. No. 39). Therefore, as to Defendant's motion for summary judgment, the only remaining issue is whether Plaintiff violated the terms of the plan by refusing to submit to an IME.

tiff a letter stating that her refusal would have two consequences. (R. 812). First, without the ability to further assess Plaintiff's medical condition beyond the available record, the available record supported Provident's decision to terminate Plaintiff's LTD benefits. Second, Defendant informed Plaintiff that by refusing to submit to an IME, she was failing to comply with one of her obligations as a participant in the plan, and such a refusal independently warranted termination of her LTD benefits. (R. 812–813).

### 1. Defendant's Request for IME Was Not Wrong

█ First, Plaintiff argues that according to the terms of the plan, Defendant did not have the authority to request an IME, because the plan only gave discretion to require an IME to Prudential Insurance Company, or the current claims administrator.[8] (Doc. No. 32 at 13). As previously noted, the plan states that:

> From time to time (at least annually) while you are receiving LTD benefits, you will be asked to submit medical proof satisfactory to the Claims Administrator that you are still totally disabled. This may include submitting to an independent medical examination by a physician designated by Prudential Insurance Company [claims administrator] at company expense. If you do not submit to a timely independent medical examination or if you do not provide timely and satisfactory proof of continued disability, your benefits will be suspended.

(Doc. No. 30, Exhibit B at 6). The plan further states that a participant's LTD benefits will stop if the participant "fail[s] to undergo required medical examinations by an independent third party designated by the Prudential Insurance Company." (Doc. No. 30, Exhibit B at 7)

Defendant claims that this language in the plan does give it, as the final decision maker, the authority to request a participant to submit to an IME. (Doc. No. 45 at 16–17). Plaintiff argues that Defendant delegated the authority to require an IME to the claims administrator; therefore, Defendant "overstepped its bounds" when it requested that Plaintiff submit to an IME. (Doc. No. 32 at 12–14).

The 1993 plan states that a participant may have to submit to an IME "by a physician designated by Prudential Insurance Company at company expense," and that benefits will stop if "you fail to undergo required medical examinations by an independent third party designated by the Prudential Insurance Company." (Doc. No. 30, Exhibit B at 7). In Defendant's September 19, 2003 letter to Plaintiff, Defendant stated that "we are prepared to suspend a final determination in this matter if Ms. Porter is willing to submit to an independent medical evaluation as soon as possible ... We will direct UNUMProvident [the current claims administrator] to schedule a comprehensive medical and psychiatric assessment of Ms. Porter's condition." (R. 817). Defendant's letter is consistent with the terms of the plan. The plan states that the physician will be designated by the claims administrator, and Defendant's letter states that Provident, the claims administrator, would set up Plain-

---

8. Plaintiff also suggests that since Defendant had not amended the plan to reflect the current claims administrator, only Prudential had the authority to request an IME. (Doc. No. 32 at 13). This argument is without merit. Plaintiff was well aware that Defendant had changed the claims administrator, for Hartford and not Prudential was the claims administrator who initially approved Plaintiff's request for LTD benefits. (R. 749–50). Following Plaintiff's logic, Hartford would not have even had the authority to approve Plaintiff's initial request, because Defendant had not amended the 1993 plan to reflect that it had changed claims administrators.

tiff's examination. Furthermore, Defendant's delegation to the claims administrator the authority to request an IME in making the initial determination did not strip Defendant of the authority to request an IME in making the final determination.

■ Second, Plaintiff argues that even if Defendant had the power to request an IME, it did not have the right to request an IME during the appeals process, since Plaintiff's benefits had already been terminated. (R. 814). Plaintiff interprets the language of the plan to only authorize a request for an IME before the initial decision to terminate Plaintiff's benefits, not after. (Doc. No. 32 at 16).

Defendant argues that this is not the case and stated in its October 22, 2003 letter to Plaintiff, that "[t]his requirement [to submit to an IME] is not artificially limited only to those periods during which a benefit claim is already being paid. The Plan Administrator is entitled to apply this provision at any time during the pendency or payment of a claim for disability benefits under the LTD Plan." (R. 813). Since Defendant has express authority to make the final determination of participant's claim, it is not an unreasonable interpretation of the plan that Defendant would also have the authority to request an IME to gather additional information when a conflict arises during the pendency of a participant's appeal.

The Court finds that Defendant's interpretation of the plan giving it the authority to require a participant to submit to an IME during the pendency of the appeals process is not wrong. Therefore, Defendant was justified in terminating Plaintiff's benefits based on her refusal to submit to an IME.

2. Even If Defendant's Interpretation Was Wrong, It Was Reasonable

■ Plaintiff argues that the provision of the plan dealing with IME's is at least ambiguous as to which entity has the power to request an IME, since the plan states that a participant must submit medical proof to the claims administrator. Therefore, the ambiguity should be construed against Defendant. (Doc. No. 32 at 13–14); *See Lee v. Blue Cross/Blue Shield of Alabama*, 10 F.3d 1547, 1551 (11th Cir.1994)("Application of this rule [contra proferentem] requires us to construe ambiguities against the drafter; in doing so, we find that [defendant's] interpretation was wrong."). However, even assuming that Defendant's interpretation of the terms of the plan giving it the authority to request an IME was wrong, the Court finds that Defendant had reasonable grounds to support its decision. *See Williams*, 373 F.3d at 1138.

After reviewing Plaintiff's medical records on appeal, Defendant found that Provident's decision to terminate her benefits conflicted with Plaintiff's evidence concerning her disability. Defendant requested an IME to resolve the conflicting information. The plan states that a participant may have to submit "to an independent medical examination by a physician designated by the [claims administrator]." (Doc. No. 30, Exhibit B at 6). The plan also states that Defendant has the absolute right "to make all determinations of fact and eligibility for benefits." (Doc. No. 30, Exhibit A at 3). Therefore, based on the express terms of the plan, the Court finds that Defendant's interpretation that the plan gave it the authority to request an IME, even if wrong, was reasonable.

■ Since the Court finds that reasonable grounds exist for Defendant's interpretation of the plan, the Court must next determine whether Defendant's interpretation is tainted by self interest. The Eleventh Circuit has stated, "[a] wrong but apparently reasonable interpretation is ar-

bitrary and capricious if it advances the conflicting interest of the administrator at the expense of the claimant." *Id.*

Plaintiff cites to *Kosiba v. Merck & Company*, 384 F.3d 58 (3d Cir.2004), to support her contention that Defendant's request for an IME during the appeals process raises an inference of self interest and bias. (Doc. No. 32 at 18–19). In *Kosiba*, Merck was the plan administrator and had delegated to a third party, UNUM Life, the responsibility for claims administration. *Id.* at 60. After UNUM Life had initially denied the plaintiff's claim for LTD benefits, Merck intervened during the appeals process and requested an IME for the first time. *Id.* at 63. The Third Circuit found that "the circumstances under which Merck made this request necessarily raise an inference of bias [for][a]t the time of the request, every piece of evidence in [plaintiff's] record" was consistent with the determination that the plaintiff was totally disabled. *Id.* at 67. In *Kosiba*, the plaintiff submitted to Merck's request for an IME, and then Merck denied the plaintiff's claim based solely on that examination. *Id.* at 63. The Third Circuit found that under these circumstances, Merck was "seeking evidence to counter [plaintiff's] physicians' evaluation." *Id.*

However, the facts in this case are clearly distinguishable from the those in *Kosiba*. In the case before this Court, not every piece of evidence in the record is consistent with a determination of total disability. Specifically, Dr. Zakem's, Plaintiff's own physician, report and Nurse Lawson's interview with Plaintiff at her home both suggest that Plaintiff was not totally disabled. (R. 587, 499–505).

Plaintiff also claims that Defendant made no effort to shed the taint of self interest. (Doc. No. 32 at 19). However, the evidence before the Court is that after reviewing Plaintiff's medical records and Provident's decision to deny her benefits, Dr. Gregg Stave, Director of Strategic Health Planning for GlaxoSmithKline, recommended that more information was needed in order to determine the accuracy of Plaintiff's medical diagnosis. (R. 826). Defendant then sent a letter to Plaintiff informing her that it would suspend its final determination if Plaintiff submitted to an IME. Defendant was also prepared to reinstate Plaintiff's LTD benefits retroactively to the initial termination date if the additional information supported Plaintiff's claim. (R. 817). If anything, Defendant's request for additional information in light of a conflict of evidence at the final stage of appeal was to Plaintiff's benefit and not at her expense.[9]

Defendant made its final determination to terminate Plaintiff's benefits only after she twice refused to submit to an IME.[10] (R. 812–813). Therefore, even if Defen-

**9.** The Eleventh Circuit has stated that "[e]ven a conflicted fiduciary should receive deference when it demonstrates that it is exercising discretion among choices which reasonably may be considered to be in the interest of the participants and beneficiaries." *Brown v. Blue Cross and Blue Shield of Alabama*, 898 F.2d 1556, 1568 (11th Cir.1990).

**10.** Plaintiff also argues that her refusal to submit to an IME was in part caused by Provident's use of the wrong plan document during the appeals phase. (Doc. No. 32 at 16). Plaintiff's argument is without merit.

As previously stated, during the second appeal, Provident used the definition for "Total Disability" from the 2000 LTD plan and not the 1993 LTD plan, which applies to Plaintiff. Plaintiff now contends that she relied on the 2000 plan in making her decision to refuse to submit to an IME. However, assuming that the 2000 plan does not give Defendant the authority to request an IME, Defendant informed Plaintiff that the 2000 plan did not apply to her case. Defendant then gave Plaintiff another opportunity to submit to an IME. (R. 813). Plaintiff did not comply with the request.

dant's interpretation of the plan giving it the authority to require Plaintiff to submit to an IME was wrong, Defendant had reasonable grounds to support that interpretation, and that interpretation did not advance the conflicting interests of the administrator at the expense of the claimant. *See Williams*, 373 F.3d at 1138.

Since the Court finds that Defendant's decision to deny Plaintiff's claim for LTD benefits for failure to submit to an IME was not wrong, it need not address whether Plaintiff's medical records supported Provident's initial decision to terminate Plaintiff's benefits. Accordingly, it is **ORDERED AND ADJUDGED** that:

(1) Defendant's Motion for Summary Judgment (Doc. No. 30) is **GRANTED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. No. 40) is **DENIED**;

(3) The pretrial conference scheduled for July 1, 2005 is hereby cancelled;

(3) The clerk is directed to enter judgement in favor of Defendant and close this case.