[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11033

Non-Argument Calendar

_____

CURTIS A. LONG,

Plaintiff-Appellant,

*versus*

S. HOSSEINI,
Doctor,
JONES,
Nurse,

Defendants-Appellees.

—————————————

Appeal from the United States District Court
for the Northern District of Florida
D.C. Docket No. 5:18-cv-00072-TKW-HTC

—————————————

Before JORDAN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Curtis A. Long appeals from the district court's grant of summary judgment in favor of Dr. S. Hosseini and Nurse B. Jones on his claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment. He also appeals the denial of his motion to compel discovery and stay summary judgment as untimely. After review of the parties' briefs and the record, we affirm.[1]

## I

### A

In March of 2018, Mr. Long—a former Florida inmate at Apalachee Correctional Institution East—filed suit against Dr. Hosseini and Nurse Jones, who had treated him throughout 2017. Mr. Long alleged that Dr. Hosseini and Nurse Jones were deliberately indifferent to his serious medical need because they failed to

---

[1] Because we write for the parties, and assume their familiarity with the record, we set out only what is necessary to explain our decision.

adequately respond when he repeatedly came to them with concerns that his hip implants were faulty.

Mr. Long had hip replacement surgery on October 1, 2015, at Orlando Regional Medical Center. By March of 2016, he had begun experiencing chronic hip pain. On February 5, 2017, Mr. Long put in an inmate sick-call request stating that he had recently seen a recall on hip replacement equipment and was unsure whether his hip equipment had been recalled. On February 14, 2017, Mr. Long saw Dr. Hosseini for the first time and advised him that he had severe pain in his back, hip, leg, knee, and foot, and which he suspected could be the result of defective equipment. Dr. Hosseini confirmed that Mr. Long had no visible signs of infection and prescribed naproxen. He also obtained a release to request the medical records pertaining to the hip replacement surgery, so that he could determine whether the hip equipment had been recalled.

On March 15, 2017, Dr. Hosseini examined Mr. Long again. He issued Mr. Long several accommodations, including a low bunk pass; a pass excusing him from pushing, lifting, or prolonged standing; and a pass for shoe insoles. He also prescribed Ibuprofen.

On April 6, 2017, Dr. Hosseini reviewed the records from Mr. Long's hip surgery. The records revealed that Mr. Long's implant involved numerous pieces of hardware from a company called Exactech. Dr. Hosseini then confirmed, using the Food and Drug Administration's online database, that none of the hardware in Mr. Long's hip had been recalled.

On August 4, 2017, Nurse Jones saw Mr. Long after he reported hot flashes, dizzy spells, blurred vision, stomach pains, and chest pains the week before.  Nurse Jones prescribed him Ibuprofen, recommended that he be administered nitroglycerin, and referred him to a clinician.  She also confirmed that he had no swelling, warmness, tenderness, or discoloration around the surgical site.  Dr. Hosseini administered an electrocardiogram, which indicated that no further testing was required.

On August 15, 2017, Dr. Hosseini ordered x-rays for Mr. Long.  The x-rays indicated mild osteoarthritic changes but no evidence of a fracture or misalignment.  At their September 1, 2021 appointment, Dr. Hosseini observed that Mr. Long "look[ed] well" and was in "no acute distress."  He also issued Long a pass for a donut cushion.  That was the last time that Dr. Hosseini examined Mr. Long.

## B

Nearly two weeks after the close of discovery, Mr. Long filed a motion to compel alleging that Dr. Hosseini and Nurse Jones failed to adequately respond to his interrogatories and request for admissions.  Mr. Long also asked the court to stay a ruling on summary judgment until Dr. Hosseini and Nurse Jones properly responded to his discovery requests.

The magistrate judge denied Mr. Long's motion to compel and stay.  The court reasoned that the motion to compel was procedurally deficient because he filed the motion after the close of

discovery and had failed to comply with Rule 37(a)(1)'s good faith certification requirement. The magistrate judge further stated that regardless of the procedural deficiencies, the motion failed on the merits because Dr. Hosseini and Nurse Jones had adequately responded to Mr. Long's discovery requests. Mr. Long appealed the magistrate judge's order, but the district court found that his objections were untimely.

## C

In December of 2020, Dr. Hosseini and Nurse Jones filed motions for summary judgment, as well as a declaration from Dr. Hosseini and several hundred pages of Mr. Long's medical records. The motions stated that Mr. Long could not show that he had suffered an objectively serious medical need of which Dr. Hosseini and Nurse Jones were aware and towards which they had acted with deliberate indifference.

The magistrate judge issued a report recommending that the motions for summary judgment should be granted. The magistrate judge assumed that the Mr. Long had demonstrated a serious medical need—chronic hip pain—and concluded that Mr. Long had not shown a genuine dispute of material fact as to whether Dr. Hosseini and Nurse Jones were deliberately indifferent to that need or whether this indifference caused him injury. The magistrate judge noted that Dr. Hosseini and Nurse Jones had prescribed various treatments for Mr. Long and that their decision not to refer him to an outside specialist was, at most, a disagreement over treatment rather than a constitutional violation. Lastly, the magistrate

judge concluded that Mr. Long had not shown that Dr. Hosseini's and Nurse Jones' actions had caused him injury.

Over Mr. Long's objections, the district court adopted the report and recommendation and granted summary judgment in favor of Dr. Hosseini and Nurse Jones.  This appeal followed.

## II

### A

We first address Mr. Long's motion to supplement the record on appeal.  Mr. Long seeks to supplement the record with several documents, some of which relate to the merits of his deliberate indifference claim and others which relate to the discovery issue. As to deliberate indifference, the relevant documents are (1) a February 10, 2021, radiology report indicating degenerative changes to the lumbar sacral spine and pelvis; and (2) a January 28, 2021, blood test indicating various abnormalities.  He states that these medical records are relevant because they reveal blood poisoning and degenerative damage that Dr. Hosseini and Nurse Jones would have detected if they had ordered the additional tests he requested. With respect to discovery, the documents consist of a response from the prison's facility classification office to an inquiry by Mr. Long stating that it had "no knowledge of [a] C.D."; a June 30, 2021, grievance sent to the assistant warden, which was denied on July 16, 2021; five inspector general complaints about the discovery CD; and the prison's mail log from August 3, 2021, which Mr. Long claims shows that Dr. Hosseini and Nurse Jones sent the discovery

nine months past the deadline and nearly six months after summary judgment was granted.

Dr. Hosseini and Nurse Jones oppose Mr. Long's motion because the documents were not part of the record at the time the district court granted summary judgment. They also argue that the documents have no bearing on the merits of Mr. Long's claims. More particularly, they note that the medical records concern issues he experienced 31 months after receiving treatment from either of them and that the prisoner grievances, complaints, and logs were prepared eight months after the discovery deadline.[2]

Although we typically do not supplement the record on appeal to include evidence that was not before the district court, we may do so if supplementing the record is "in the interests of justice" or would "aid [the Court in] making an informed decision," even where "the added material will not conclusively resolve an issue on appeal." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 n.4 (11th Cir. 2003). We grant Mr. Long's motion in part and deny it in part. We deny the motion as to discovery-related documents because Mr. Long has not articulated any specific argument as to how his lack of access to the documents produced on a CD interfered with his ability to respond to summary judgment. We grant the motion as to the medical records because they arguably support Mr. Long's

---

[2] Dr. Hosseini and Nurse Jones also incorporated a motion for sanctions under Rule 38, contending that both the motion to supplement and the appeal itself are frivolous. *See* Fed. R. App. P. 38. That motion is DENIED.

claims that Dr. Hosseini and Nurse Jones acted in a way that may have caused or exacerbated an injury.

## B

Next, we address the denial of Mr. Long's motion to compel discovery. We review the denial of a motion to compel for an abuse of discretion. *See Sanderlin v. Seminole Tribe*, 243 F.3d 1282, 1285 (11th Cir. 2001). The magistrate judge denied the motion to compel, finding that it had been untimely filed and that Mr. Long had failed to confer with Dr. Hosseini and Nurse Long. The district court affirmed the magistrate judge's order denying the motion and disregarded Mr. Long's objections, concluding that they were untimely.

Pursuant to Rule 72(a), when a magistrate judge rules on a non-dispositive matter, "[a] party may serve and file objections to the order within 14 days *after being served* with a copy." *See* Fed. R. Civ. P. 72(a) (emphasis added). The district court is required to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Id.*

Despite the district court's conclusion to the contrary, Mr. Long did, in fact, timely object to the magistrate judge's ruling denying his motion to compel. Mr. Long was served with a copy of the order on February 16, 2021, and he mailed his objection on March 2, 2021—exactly 14 days after having been served. So Mr. Long did not waive his right to appeal the magistrate judge's order on his motion to compel.

We affirm the district court's order, however, because Mr. Long failed to challenge all the grounds the magistrate judge gave for denying the motion to compel. The magistrate judge concluded that the motion was untimely because it was filed after the close of discovery, that the motion failed to certify that Mr. Long had conferred in good faith with the defendants, and that Mr. Long failed to state why each of the defendants' responses were inadequate.

Without addressing the merits of each of these conclusions, we note that the motion could have properly been denied on untimeliness grounds alone. Mr. Long filed his discovery motion after the discovery cutoff. So the district court did not abuse its discretion in denying it. See Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1307 (11th Cir. 2011). ("[W]e have often held that a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion.") (citation omitted).

## C

Finally, we turn to the district court's grant of summary judgment in favor of Dr. Hosseini and Nurse Jones. We review a district court's grant of summary judgment de novo. See Holloman v. Mail-Well Corp., 443 F.3d 832, 836 (11th Cir. 2006).

Summary judgment should be granted only after the party opposing the motion "has had an adequate opportunity to conduct discovery." Reflectone, Inc. v. Farrand Optical Co., 862 F.2d 841,

843 (11th Cir. 1989). If the party opposing summary judgment shows by affidavit or declaration that, for specific reasons, it cannot present facts essential to justify its opposition to summary judgment, the court may defer consideration of or deny a motion for summary judgment. *See* Fed. R. Civ. P. 56(d). The decision to deny a Rule 56(d) motion is reviewed for an abuse of discretion. *See Burns v. Town of Palm Beach*, 999 F.3d 1317, 1330 (11th Cir. 2021).

A Rule 56(d) movant "must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Id.* at 1334 (quoting *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1287 (11th Cir. 2019)). For example, in *Burns* we upheld the denial of a Rule 56(d) motion where the plaintiff referenced broad categories of discovery rather than specific facts that discovery would uncover, failed to explain why that discovery was necessary, and had five additional months after the declaration to obtain discovery, during which time he did not renew his objection. *See id.*

If the non-movant does not file a Rule 56(d) declaration, "the interests of justice" may nonetheless "require a district court to postpone its ruling on a motion for summary judgment." *Snook v. Trust Co. of Georgia Bank, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988). This occurs only in "limited circumstances" and where the party opposing summary judgment has informed the court of outstanding discovery using an equivalent form of notice. *See City of*

*Miami Gardens*, 931 F.3d at 1287–88.  The party opposing summary judgment bears the burden of identifying any outstanding discovery.  *See id.* at 1288.

Here, the district court did not abuse its discretion in declining to postpone a ruling on summary judgment because Mr. Long did not specifically demonstrate how postponing judgment would enable him to show genuine disputes of material fact.  Mr. Long did not file a Rule 56(d) motion advising the court that he could not access the CD containing the exhibits for Dr. Hosseini's and Nurse Jones' motions for summary judgment.  Nor did he use an equivalent form of notice to inform the court why postponement was in the "interests of justice."  *See Snook*, 859 F.2d at 871.  Although he did argue, in his opposition motion, that his inability to access the CD hindered his ability to respond to the motions, he did not specifically identify which exhibits he would have needed or how they would have enabled him to respond to particular parts of Dr. Hosseini's and Nurse Jones' motions.  He did not, for example, dispute any of the contentions about his symptoms or what treatment he received.  *See Burns*, 999 F.3d at 1334.

Turning to the merits of the summary judgment entered by the district court, Mr. Long has abandoned his challenge to the court's order.  Where a judgment is based on multiple independent grounds, an appellant must challenge every stated ground for the decision.  *See Sapuppo v. Allstate Floridian Ins. Co.,* 739 F.3d 679, 680 (11th Cir. 2014).  If he fails to challenge one ground, he is deemed to have abandoned that challenge, which will result

affirmance of the judgment. *See id.* An appellant also abandons a claim when: (a) he makes only passing references to it; (b) he raises it in a perfunctory manner without supporting arguments and authority; (c) he refers to it only in the "statement of the case" or "summary of the argument"; or (d) he discusses the issue as mere background to his main arguments or buries the issue within those arguments. *See id.* at 681.

Mr. Long failed to challenge each of the independent grounds for the district court's decision. The district court granted summary judgment on two bases: (1) Mr. Long did not show that Dr. Hosseini and Nurse Jones were deliberately indifferent; and (2) Mr. Long did not show that Dr. Hosseini and Nurse Jones caused him injury.

In his initial brief, Mr. Long asserted that Dr. Hosseini and Nurse Jones showed deliberate indifference mostly in passing, and without adequate support and authority. For example, in his statement of the case, Mr. Long writes that some of his grievances were "fraudulently whited-out to mislead the Court to believe he hadn't shown injury causes and deliberate indifference." Appellant's Initial Br. at 6. He does not, however, indicate which documents were whited out or how, in their unaltered form, they would have shown deliberate indifference. Also in his statement of the case, he cites to a report and recommendation in a separate case as evidence that Dr. Hosseini knew the medical risks associated with a defective hip replacement. *See id.* at 7. But, again, he fails to explain how this report demonstrates Dr. Hosseini's knowledge of the risks

of a faulty metal hip replacement or how it shows that Mr. Long, specifically, was at risk.

In the body of his brief, Mr. Long argues that the court "failed to consider" his motions, memoranda, original complaints, and "medical records and documentations"—all of which, according to him, show sufficient factual issues to survive a motion to dismiss. *See id.* at 16–17. Assuming this were true, Mr. Long is not appealing the grant of a motion to dismiss; the order on appeal is a grant of summary judgment. And opposing a summary judgment motion requires evidence, in contrast to a case at the dismissal stage. Additionally, the conclusory statement that his "medical records" show deliberate indifference, without any supporting argument or authority, is insufficient to properly preserve his argument.

Even if Mr. Long's passing references to deliberate indifference were sufficient to preserve his argument on appeal, we would nonetheless affirm because Mr. Long has not shown that Dr. Hosseini or Nurse Jones were deliberately indifferent to his medical needs. Dr. Hosseini prescribed Mr. Long medication, ordered x-rays, and afforded him numerous accommodations. When Mr. Long expressed concern that his hip implant had been recalled, Dr. Hosseini ordered the medical records from Mr. Long's prior hospital. Dr. Hosseini compared those records to the FDA online database and confirmed that none of Mr. Long's hardware had been recalled. Of the four times Dr. Hosseini saw Mr. Long, he examined him for visible signs of infection three times and sent him for

testing twice.  Mr. Long has shown no dispute of material fact as to whether Dr. Hosseini indeed checked the FDA records or administered proper treatment.  Thus, even assuming that Mr. Long had a serious medical condition and suffered an injury, Dr. Hosseini's conduct does not constitute deliberate indifference.

When Nurse Jones examined Mr. Long, she prescribed him Ibuprofen, ordered an EKG, and referred him to a clinician.  Mr. Long then saw Dr. Hosseini the same day.  Nurse Jones' decision to promptly refer Mr. Long to a physician does not exhibit a disregard of risk of serious health problems.  Although Mr. Long alleges that he saw Nurse Jones multiple times related to his hip pain, the records demonstrate otherwise.  The records show that he met with Nurse Jones only once concerning his hip pain, after which he promptly received medical care.

On this record, Mr. Long has failed to show a genuine dispute of material fact as to whether Dr. Hosseini and Nurse Jones were deliberately indifferent.  Mr. Long's new medical records do not change our conclusion.  As the defendants correctly point out, the records concern issues that Mr. Long experienced 31 months *after* receiving treatment from Dr. Hosseini and Nurse Jones.

### III

We affirm the district court's entry of summary judgment in favor of Dr. Hosseini and Nurse Jones.

**AFFIRMED.**