[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-12081

Non-Argument Calendar

_____

MICHAEL MCEVOY,
on behalf of himself and others similarly situated,

Plaintiff-Appellant,

*versus*

APOLLO GLOBAL MANAGEMENT LLC,
a Delaware limited liability company,
APOLLO MANAGEMENT VI, L.P.,
a Delaware limited partnership,
CEVA GROUP, PLC,

Defendants-Appellees,

2                     Opinion of the Court                22-12081

GARETH TURNER, et al.,

                                                        Defendants.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 3:17-cv-00891-TJC-MCR

_____

Before WILSON, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant Michael McEvoy appeals the district court's order denying his request for discovery to support his burden of proof on various statute of limitations issues. McEvoy also appeals the district court's order granting Apollo Global Management, Inc.; Apollo Management VI, L.P; and CEVA Group PLC's (collectively Appellees) motion for summary judgment. After careful review, we affirm.[1]

---

[1] McEvoy has petitioned for an initial hearing en banc, pursuant to Federal Rule of Appellate Procedure 35. No Judge in regular active service on this Court has requested that the Court be polled about en banc consideration. McEvoy's petition for hearing en banc is **DENIED**.

I.

McEvoy worked for Customized Transportation, which Apollo Global Management, Inc. and Apollo Management VI, L.P (collectively Apollo) purchased. In 2006, Apollo merged with EGL, Inc. to form CEVA Logistics, a subsidiary of CEVA Group involved in global freight management and supply chain logistics. Until 2013, CEVA Group itself was 99.9 percent owned by CEVA Investments Limited (CIL), a Cayman Islands corporation. In 2006, CEVA Logistics asked McEvoy and other management-level employees to purchase equity in CIL through a fund called the 2006 Long-Term Incentive Plan (2006 LTIP). When McEvoy invested approximately $10,000 in 2006 LTIP, he received and reviewed the 2006 LTIP Agreement.

Around mid-2012, CEVA Group faced financial problems and determined that financial restructuring was the only way for it to survive. In what we refer to here as the 2013 Transaction, CEVA Group converted much of CIL's debt into equity ownership of a new entity called CEVA Holdings, LLC (CEVA Holdings). The transaction effectively wiped out all previous investment in CIL, including the 2006 LTIP shares' value.[2]

---

[2] Ultimately, CEVA Holdings developed a 2013 LTIP, which allowed certain employees to received stock options and other employees to receive cash payments and became effective on June 11, 2013. But the benefits provided in the 2013 LTIP did not apply to any former employees of CEVA Group. CEVA

CEVA Group's financial troubles also spelled trouble for McEvoy. First, in December 2012, CEVA Logistics informed McEvoy that he would be laid off in March 2013. On January 21, 2013, McEvoy exercised his right to sell his 2006 LTIP shares and received notice the next day that CEVA would purchase the shares back on April 1, 2013. McEvoy also learned that the value for each share was around 50 Euros (€). Then on April 5, 2013, McEvoy received a letter stating that "[t]he directors of [CIL] have received advice from valuation and restructuring professionals that [CIL's] shareholding in CEVA is now without value, in consequence of the financial condition of CEVA. You may have seen, or shortly will see, press announcements concerning the proposed restructuring of CEVA."

McEvoy received at least three letters between April 8, 2013 through June 14, 2013, discussing the liquidation proceedings of CIL in the Cayman Islands and the involuntary Chapter 7 bankruptcy proceeding against CIL in the Southern District of New York (filed in April 2013). In the bankruptcy proceeding, the Chapter 7 trustee alleged that Apollo orchestrated a fraudulent transfer of CIL's interest in CEVA Group to CEVA Holdings without consideration, naming CIL directors Gareth Turner and Mark Beith, CEVA Group, and CEVA Holdings as defendants.

---

Holdings' 2013 Annual Report, released on February 28, 2014, also discussed the new 2013 LTIP plan.

On August 3, 2017, McEvoy filed a putative class action lawsuit in the Middle District of Florida against Apollo Global Management and the CIL directors (Turner and Beith), alleging self-dealing and fraudulent conversion. The Chapter 7 bankruptcy trustee moved to enjoin McEvoy's case, arguing the claims asserted were derivative claims that were property of CIL's estate. *In re CIL Ltd.*, No. 13-11272-JLG, 2018 WL 878888, at \*1 (Bankr. S.D.N.Y. Feb. 9, 2018). The Bankruptcy Court agreed, declaring McEvoy's putative class action in this Court "null and void *ab initio.*" *Id.* at \*12. But the Bankruptcy Court allowed McEvoy to file a proposed amended complaint asserting direct claims in the Middle District of Florida.

On December 7, 2018, McEvoy filed his amended class action complaint, which removed the two CIL directors and added CEVA Group and Apollo Management VI, L.P. The amended complaint also included another claim that the named defendants caused putative class members "to not receive, or not equally receive, a required adjustment" as part of CEVA's 2013 restructuring.

Appellees moved to dismiss McEvoy's amended complaint, but the district court converted those motions to a motion for summary judgment and ordered limited discovery on the statute of limitations. During the limited discovery, McEvoy moved to compel production from twelve broad categories of documents from Apollo. The district court struck Apollo's general objections but denied McEvoy's motion to compel.

Following discovery, the district court initially denied Appellees' converted motion for summary judgment. However,

Appellees sought reconsideration under Federal Rule of Civil Procedure 59(e), and the district court ultimately granted the Appellees' motion for reconsideration and their motion for summary judgment.  McEvoy timely appealed.[3]

## II.

First, we turn to McEvoy's argument regarding the district court's denial of his discovery requests.  McEvoy contends that the district court abused its discretion when it denied his motion to compel discovery.  Specifically, McEvoy argues that the denial substantially harmed him by precluding the development of a full record on many issues, including his tolling theories.

Despite Appellees' arguments related to McEvoy's compliance with Federal Rule of Civil Procedure 56(d), McEvoy did not ask the district court to postpone ruling on the summary judgment until he could complete further discovery.[4]  Thus, our review is

---

[3] Appellees moved to file demonstrative evidence in this case.  Specifically, Appellees seek to enter a redline version comparing the original complaint with the amended complaint.  McEvoy does not oppose this request.  Thus, Appellees' motion to file demonstrative evidence is **GRANTED**, and the redline evidence has been reviewed in consideration of this appeal.

[4] In his response to Appellees' motion for summary judgment, McEvoy drops a footnote saying that because he could not conduct discovery, the facts relied on by Appellees are disputed and should not be relied on.  Even if McEvoy's single footnote in his response to summary judgment can be construed as request under Rule 56(d), McEvoy has failed to meet his burden.  "[T]he party opposing the motion for summary judgment bears the burden of calling to the district court's attention any outstanding discovery." *Snook v. Tr. Co. of Ga.*

cabined to whether the district court abused its discretion in denying McEvoy's motion to compel. *See Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011) ("The district court has broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery; we therefore review the court's discovery rulings for an abuse of that discretion.").

Here, the district court did not abuse its broad discretion managing the limited discovery it ordered. Because the district court converted Appellees' motion to dismiss to a motion for summary judgment, it contemporaneously ordered limited discovery on the statute of limitations issue raised by Appellees. Reviewing the record, McEvoy sought to take the district court's allowance for discovery on this issue well past its intentionally limited scope. As the Appellees correctly point out, McEvoy sought discovery that would help him prevail on his underlying claim, which is beyond the type of discovery permitted by the district court. Ultimately, the district court is in the best position to review requests for additional discovery and to determine whether they are proportional to the needs of the case. *See* Fed. R. Civil P. 26(b)(1). Here, the district court did not abuse its position.

---

*Bank of Savannah, N.A.*, 859 F.2d 865, 871 (11th Cir. 1988). "The preferred vehicle for advising a district court of the need for further discovery is an affidavit or declaration submitted under Federal Rule of Civil Procedure 56(d)." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1287 (11th Cir. 2019). McEvoy did not submit an affidavit or a declaration to the district court explaining what additional discovery he needed.

Further, McEvoy cannot show that there was substantial harm to his case. *See Iraola & CIA, S.A. v. Kimberly–Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (noting that we do not reverse discovery decisions unless the challengers demonstrate that those decisions resulted in substantial harm to their case). The district court's determination on summary judgment turned on how the statute of limitations impacted McEvoy's claims. As discussed below, the district court concluded that McEvoy was on inquiry notice about his prospective claims. Thus, failure to provide McEvoy with additional discovery would not have caused him substantial harm (especially in light of the fact that several of the documents that put McEvoy on inquiry notice were in McEvoy's possession).

Thus, the district court did not abuse its discretion in denying McEvoy's motion to compel.

Next, we turn to McEvoy's arguments regarding the district court's grant of summary judgment in favor of Appellees. "'We review the district court's grant of summary judgment de novo, viewing all facts and drawing all inferences in the light most favorable to' the nonmoving party." *Pelaez v. Gov't Emps. Ins. Co.*, 13 F.4th 1243, 1249 (11th Cir. 2021) (quoting *Eres v. Progressive Am. Ins. Co.*, 998 F.3d 1273, 1278 n.3 (11th Cir. 2021)); *see also St. Louis Condominium Ass'n, Inc. v. Rockhill Ins. Co.*, 5 F.4th 1235, 1242 (11th Cir. 2021) (reviewing a motion to amend judgment under Federal Rule of Civil Procedure 59(e) for abuse of discretion unless the ruling turns on a question of law that is reviewed de novo).

McEvoy marshals two arguments.  First, McEvoy contends that the district court erred when it found that his amended complaint did not relate back to his initial complaint under Federal Rule of Civil Procedure 15(c).[5]  Second, McEvoy argues that the district court erred when it held that he was on inquire notice of his claims as a matter of law.

Even assuming arguendo that the district court incorrectly found that McEvoy's amended complaint did not relate back, we can still affirm the district court's order because there is no genuine issue of material fact that McEvoy was on inquiry notice of his claims before August 3, 2014.  *See Stewart v. Happy Herman's Chesire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) ("[W]e may affirm the district court's grant of summary judgment on any adequate ground, even if it is other than the one on which the district court actually relied.").

---

[5] McEvoy argues that we use the wrong standard of review when determining whether an amended complaint relates back to the initial complaint under Federal Rule of Civil Procedure 15(c).  This circuit uses the abuse of discretion standard for reviewing Rule 15(c) determinations by a district court.  *See, e.g.*, *Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998).  Ten other circuits use a de novo standard of review.  *See United States v. Alaniz*, 5 F.4th 632, 635 n.2 (5th Cir. 2021) (noting that while it was an open question in the Fifth Circuit whether a relation-back decision should be subject to de novo or abuse-of-discretion review, every circuit except the Eleventh Circuit uses de novo review).  Because we assume without deciding that the district court erred in its relation-back inquiry, we need not address McEvoy's argument that our precedent conflicts with the Supreme Court in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553 (2010).  We leave that for another day.

No party disputes the district court's determination that McEvoy's claims arose no later than June 11, 2013—the date the 2013 LTIP became effective.  Under Delaware law, the statute of limitations for claims for breach of fiduciary duty is three years.  Del. Code Ann. tit. 10 § 8106.  Thus, McEvoy had until June 11, 2016 to file his claim.  McEvoy filed his *original* complaint on August 3, 2017—over one year past the statute of limitations.  For McEvoy's original complaint to be timely, he must have showed that the claim was tolled from June 11, 2013 to at least August 3, 2014.  But whether or not any tolling doctrine applies to McEvoy's claims, "the limitations periods is tolled [only] until such time that persons of ordinary intelligence and prudence would have facts sufficient to put them on inquiry which, if pursued, would lead to the discovery of the injury." *In re Dean Witter P'ship Litig.*, No. CIV. A. 14816, 1998 WL 442456, at *7 (Del. Ch. July 17, 1998), *aff'd*, 725 A.2d 441 (Del. 1999) (emphasis omitted).

A review of the record shows that McEvoy received enough information to put him on inquiry notice. First, in December 2012, CEVA Logistics informed McEvoy that he would be laid off in March 2013.  On January 21, 2013, McEvoy exercised his right to sell his 2006 LTIP shares and received notice the next day that CEVA would purchase those shares back on April 1, 2013.  McEvoy also learned the value for each share was around €50.  Then on April 5, 2013, McEvoy received a letter discussing CEVA Group's restructuring, explaining that his shares had no value, and stating he would not receive any recovery due to his shareholding in CIL.

In addition, McEvoy received letters about the Cayman Island litigation and the Bankruptcy proceedings concerning CIL. As the district court stated:

> McEvoy should have been on inquiry notice in 2013 when he was suddenly informed that his shares, which had been worth €50 each, were now worth €0. McEvoy had the 2006 LTIP Agreement in his possession, which he alleges mandated adjustments to his investment. McEvoy could see that CEVA continued to operate after he was let go, and that it was perhaps expanding, even hiring him temporarily to start up a new contract.

*McEvoy v. Apollo Glob. Mgmt., LLC*, No. 3:17-CV-891-TJC-MCR, 2022 WL 718393, at *7 (M.D. Fla. Mar. 10, 2022).

Thus, we find that Appellees met their burden "to point to undisputed facts in the record which demonstrate conclusively that [McEvoy] had notice of [his] claims, and, that, had [he] exercised reasonable diligence, [he] would have discovered adequate grounds for filing [his] lawsuit during the limitations period." *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.*, 198 F.3d 823, 832 (11th Cir. 1999), *amended in part,* 211 F.3d 1224 (11th Cir. 2000)

### III.

For the reasons stated above, we affirm both the district court's denial of discovery and the district court's summary judgment in favor of Appellees.

**AFFIRMED.**